KERR v. EAST CENTRAL ARKANSAS REGIONAL HOUSING AUTHORITY.

4-7686                                          187 S. W. 2d 189

Opinion delivered April 30, 1945.

*Harry Neely,* for appellant.

*John D. Thweatt,* for appellee.

GRIFFIN SMITH, Chief Justice. Act 298, approved March 23, 1937, authorizes creation of Housing Authorities in Cities of the First Class and in Counties. Its constitutionality was questioned in *Hogue v. The Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49. Every objection urged against its validity was denied. In 1941, (Act 352 approved March 26th) §§ 10 and 22 of Act 298 were amended. Result is that the two Acts constitute a comprehensive and harmonious measure whereby, as it is said, relief from dangers to public health in cities and rural areas may be procured through elimination of "slums" and their incidents.

The legislation of 1937 authorizes creation of a public body corporate and politic when a City or County shall take appropriate action, to be expressed in the form of a resolution of intent and a declaration of necessity, together with certain other formalities. See § 4, Act 298. Five commissioners are appointed—by the mayor, if a city; by the court, if a County. The Authority so established is given broad powers. It may sue and be sued, and it may perform such duties as are necessary to administration of the purposes expressed in the statute, or that may be appropriately implied.

Act 352 of 1941 broadens activities of Housing Authorities by providing that two or more contiguous Counties may create a Regional Authority; and pursuant to this grant of power fourteen Counties formed the East Central Arkansas Regional Housing Authority.[1] The governing body of the Regional Authority is composed of a Commissioner from each County. The suit from which

[1] The counties are: Cleburne, Faulkner, Monroe, Phillips, Prairie, Van Buren, Woodruff, Conway, Lee, Perry, Pope, Stone, White and Lonoke.

this appeal comes was instituted by E. C. Kerr, a citizen and taxpayer of Prairie County, who alleged that a Housing Authority had been created in each of the Counties and that these separate organizations were functioning October 28, 1941. Certain sums had been borrowed under a plan whereby United States Housing Authority made loans equal to ninety percent of the construction cost of homes for farmers having low incomes. The right to issue bonds is given by § 14 of Act 298. The United States Authority also agreed that for a period not to exceed sixty years it would contribute to the County Authority with which it had contracted three and a quarter percent of construction or development costs of the houses. The ten percent (difference between what the United States Authority would lend and the one hundred percent construction cost) was supplied from proceeds of the County Authority's bonds sold to the public.

Appellant Kerr, suing for himself and all other taxpayers within the area similarly situated, charged that Lonoke County Authority had borrowed $164,200, and that its bonds for this sum were outstanding.

April 25, 1942, East Central Arkansas Regional Housing Authority (hereafter referred to as Regional Authority) contracted with Federal Public Housing Authority, (successor to United States Housing Authority) the latter agreeing to advance $675,000 as a loan for use in erecting "approximately" 313 rural dwellings, total cost to be $825,000. The contract further provided that the Regional Authority might, in addition, sell $82,500 of its three percent bonds at not less than par, such bonds to be secured by annual contribution made by the Federal Authority and by a pledge of income. Rentals on each house were estimated to be $75 a year. The Federal Authority, furthermore, agreed to make annual contribution for sixty years in a sum equal to three and a half percent of total development cost.[2]

The housing plan provides for purchase from a farm or plantation owner of a small parcel of land—ordinarily

---

[2] This three and a half percent contribution to the Regional Authority is not to be confused with the grant of three and a quarter percent grant to the Lonoke County Authority heretofore mentioned.

an acre—upon which the house is built. When the owner accepts the Authority's offer to buy, he retains an option to repurchase at any time. Such grantor, his tenant, sharecropper, or wage hand, is given priority of occupancy, and as long as the house is available to such preferred person the farm or plantation out of which the tract is carved cannot, under the contract, be used for any purpose other than farming; and it must be cultivated by the landowner, his tenant, sharecropper, or wage hand unless the Authority agrees otherwise. An additional covenant is that the landowner who thus conveys shall demolish or "eliminate from use" at least one substandard dwelling found to be unsafe or insanitary.

The Act of 1941 broadening scope of operations and enlarging the basic plan permits Regional Authorities to assume obligations of a County Authority, by agreement, in those instances where the County organization merges with or becomes a part of the Regional unit. In the appeal before us it is agreed that the statute has been followed.

Section 25 of Act 298 confers upon Cities and Counties the right to donate money for use in defraying "administrative expenses and overhead of such Housing Authority during the first year" . . . of its corporate existence. The section also undertakes to allow Cities and Counties ". . . to lend or donate money to the Authority, or agree to take such action."

The complaint alleged (1) that the purpose of the proposed project was private, hence the statutory attempt to exempt the Authority from taxation is unconstitutional; (2) Counties cannot lawfully appropriate for "donations" to cover administrative expenses; (3) the so-called purpose to eliminate insanitary rural buildings is not comparable to similar undertakings in urban areas; (4) the Authority is a municipality within the meaning of Art. 16, § 1, of the Constitution and is therefore prohibited from issuing interest-bearing evidences of indebtedness; (5) legislative power has been delegated; (6) the amending Act grants special privileges in contravention of Art. 2, § 18, of the Constitution.

The appeal is from a decree sustaining a demurrer to the complaint.

*Objection No. 1.*—Constitutionality of Act 298 of 1937 was the issue in *Hogue* v. *The Housing Authority of North Little Rock,* 201 Ark. 263, 144 S. W. 2d 49. Most of the questions presented by the instant appeal were involved in the Hogue case. It was followed by *Denard* v. *Housing Authority of Fort Smith,* 203 Ark. 1050, 159 S. W. 2d 764. In the Denard opinion there is the statement that the Hogue decision declared Act 298 to be without constitutional objection on any of the grounds upon which the controversy was predicated. The Hogue opinion, written by Mr. Justice Humphreys (now retired) contains this paragraph: "We declare broadly and without reservation that [Act 298] creates a public agency or authority to perform necessary public purposes and uses."

In a carefully prepared and forceful dissenting opinion Mr. Justice Frank G. Smith distinguished between what he construed to be a "public use" and a "public benefit." His view was that while benefits accruing to those favored by the Housing Act might be sufficient to sustain condemnation, exclusive public use, or a right upon the part of the public as a whole to participate in benefits arising from the transaction, was necessary before the property could be made tax-exempt.

*Second.*—The Hogue case, with its citation of authorities, refutes appellants contentions that a County or City is without constitutional power to donate money for a public purpose in those instances where the General Assembly has designated the activity that is to be benefited. See *City of North Little Rock* v. *Community Chest of Greater Little Rock,* 204 Ark. 562, 163 S. W. 2d 522, 142 A. L. R. 1072, and *Neel* v. *City of Little Rock,* 204 Ark. 568, 163 S. W. 2d 525, 142 A. L. R. 1071. But while the right of a City or County to donate money for the use there considered was upheld, the public purpose was intra-city or intra-county. The broader activity expressed in Act 352 of 1941 whereunder a County may

donate to a Regional Authority within which its building activities are embraced was not before the Court; nor is the issue properly here by this appeal. The Act only authorizes donations during the first year following creation of an Authority. It is shown by the record that the Regional Authority made its contracts April 25th, 1942; and, since the first year—that is, the only year within which donations may be made—has expired, the question is moot.

That portion of § 26 of Act 298 conferring power upon Cities and Counties ". . . from time to time to lend . . . money" was not raised in Hogue's complaint against the North Little Rock Authority. Neither is it presented in the case at bar, there being no allegation that loans had been made, or were contemplated.

We think the principal ground distinguishing the instant appeal from Hogue's case is that in the North Little Rock transactions elimination of so-called "slums" in a heavily populated district was the compelling motive, while in respect of farming operations and community life in rural areas the same physical facts may not apply. The difference is one of degree. Public policy is declared by the General Assembly; not by courts. Unless there is something in the Constitution restraining the Legislature from saying that a designated course of conduct or a policy is for the public welfare, or unless the thing authorized is so demonstrably wrong that reasonable people would not believe that such was the legislative intent, the Act must prevail.

Since essentials of Act 298 were sustained in the Hogue case, subsequently adhered to, and since the distinction to be drawn is not susceptible of being measured, graded, or determined by ratio or known formula, it must again be held that the legislative finding is binding and that the purpose to be served is a public one.

Affirmed.

Mr. Justice Frank G. Smith dissents.