*In re* SLUM CLEARANCE BETWEEN HASTINGS, GRATIOT, DE QUINDRE AND MULLETT STREETS.

APPEAL OF THE AMERICAN PIPE & SUPPLY COMPANY.

1. EMINENT DOMAIN—SLUM CLEARANCE—PEREMPTORY CHALLENGES.
     Limiting defendant property owners to 6 peremptory challenges collectively in slum clearance condemnation proceedings under statutes, city charter and ordinance was not error of which the property owners could complain, where statutes under which the proceeding was brought did not allow peremptory challenges, the number of challenges was in accord with the charter and statute allowing 5 peremptory challenges to each party in a civil case was not applicable (CL 1948, §§ 213.76, 213.88, 213.94, 618.40; Detroit Charter, title 8, ch 1; Detroit Ordinance No 262–C).

2. SAME—CITY CHARTER.
     Provisions of city charter authorizing the condemnation of private property for public use are not open to the objection that they allow use of condemned property for private purposes (Detroit Charter, title 8, ch 1).

3. SAME—SLUM CLEARANCE A PUBLIC USE.
     Acquisition of land by city through condemnation proceedings for the one controlling purpose of slum clearance is a taking for a public purpose (Detroit Charter, title 8, ch 1).

4. SAME—SLUM CLEARANCE—ABATEMENT OF COST THROUGH RECONSTRUCTION AND RESALE—PROFIT.
     Reconstruction on land and resale thereof, sought in petition for condemnation of private property for slum clearance pur-

REFERENCES FOR POINTS IN HEADNOTES
[1] Generally as to the number of peremptory challenges, see 31 Am Jur, Jury § 190.
[2] 18 Am Jur, Eminent Domain §§ 36–39.
[3–6] 18 Am Jur, Eminent Domain § 41.
[3–6] Eminent domain: Combination of public and private uses or purposes. 53 ALR 9.
[7] 18 Am Jur, Eminent Domain §§ 253, 255.
[8, 9] Generally as to damages upon condemnation, see 18 Am Jur, Eminent Domain § 240 *et seq.*

poses *held,* not a primary purpose and incidental and ancillary to the primary purpose of clearance and not for the purpose of enabling the city or anyone else to make a profit even though it abated the cost of the project (Detroit Charter, title 8, ch 1).

5. CONSTITUTIONAL LAW—POLICE POWER—SLUM CLEARANCE.

To remove health, crime and fire hazards by slum clearance, is clearly a proper and reasonable exercise of the police power and the subsequent rehabilitation or restoration by erection of a housing project, planned and supervised by a housing authority, and which passes into private hands to private property does not change the nature of the slum clearance as being a public improvement in the public interest (CL 1948, § 125.601 *et seq.*; § 125.651 *et seq.*).

6. EMINENT DOMAIN—INCIDENTAL USE OF PORTION FOR PRIVATE BENEFIT.

Condemnation proceedings for the acquisition of so much and no more property than is necessary for a permissible public use will not be defeated by the mere fact that an incidental private benefit or use of some portion of such property will result.

7. SAME—REMOVABLE FIXTURES.

Removable fixtures which had been installed by defendants in warehouse remain their property upon condemnation of the realty for a public use and are not to be taken by the condemning city.

8. SAME—CONSEQUENTIAL OR SEVERANCE DAMAGES—EVIDENCE.

It was not error to deny defendant property owners the right to present testimony as to asserted consequential or severance damages in addition to the compensation found by the jury as to the value of the parcel condemned on which were located buildings used in part for warehouse purposes, where defendants had elicited from one of their witnesses opinion testimony as to the fair market value of the parcel as a whole, comparable with other buildings in the market, indicating such buildings were replaceable so far as concerns the portion of the defendants' business there conducted.

9. SAME—AWARD—EVIDENCE.

Award in condemnation proceedings of $40,000 for property used in part by defendants for warehouse purposes in connection with their plumbing supply business, which was well within the range of values presented by witnesses *held,* just compensation in view of the whole situation.

Appeal from Recorder's Court for the City of Detroit; Krause (Paul E.), J.   Submitted April 5, 1951.   (Docket No. 28, Calendar No. 45,010.)   Decided December 3, 1951.

In the matter of Slum Clearance between Hastings, Gratiot, De Quindre, and Mullett Streets.   Verdict and judgment of necessity and fixing compensation for parcels taken.   American Pipe & Supply Company and certain of the defendants appeal.   Affirmed.

*Paul T. Dwyer,* Acting Corporation Counsel, and *Vance G. Ingalls,* Assistant Corporation Counsel, for city of Detroit.

*Shapero & Shapero,* for defendant American Pipe & Supply Company.

*Leemon & Leemon,* for defendants Assik and others.

*Marcus, Kelman & Loria,* for defendant Reich.

*Irwin Friedman,* for defendants Friedman.

REID, C. J.   The petition in this matter was filed to institute condemnation proceedings to take private property for the public use or benefit, for the purpose of eliminating housing conditions detrimental to the public peace, health, safety, morals and welfare, and to aid in replanning and reconstruction of the area involved, in accordance with PA 1937, No 293, as amended (CL 1948, § 125.601 *et seq.* [Stat Ann 1949 Rev § 5.3057(1) *et seq.*], PA 1933 (Ex Sess), No 18, as amended (CL 1948, § 125.651 *et seq.* [Stat Ann 1949 Rev § 5.3011 *et seq.*]), with the provisions of ordinance 262-C, and title 8, chapter 1, of the charter of the city of Detroit.

From judgment on a verdict determining the necessity for the taking of their property and award of damages, several owners of property involved, appeal.

A ground of appeal common to all appellants (defendants), is the order and decision of the court allowing defendants 6 peremptory challenges collectively and not 5 peremptory challenges to each defendant property owner, separately.

The proceeding was brought under the provisions of the Detroit city charter and the trial court (recorders court for the city of Detroit) followed the provisions of said charter in allowing 6 peremptory challenges to defendants *collectively.* The provisions of the charter in that regard are stated in title 8, ch 1, § 6, as follows:

"The city on one side and the respondents and taxpayers on the other, shall have the right to challenge peremptorily 3 persons called to serve as jurors in each such proceedings; in the discretion of the judge of said court the number of peremptory challenges may be increased to not exceeding 6 on each side."

Defendants claim that such charter provision is void as contravening the State statute, CL 1948, § 618.40 (Stat Ann § 27.1020), which is in part as follows:

"In all civil cases each party may challenge peremptorily 5 jurors."

Defendants cite *People* v. *Welmer,* 110 Mich 248, which, however, was a criminal case governed by a statute differing from the statute and charter provision involved in this case.

CL 1948, § 213.88 (Stat Ann § 8.60) and CL 1948, § 213.94 (Stat Ann § 8.66) are sections of PA 1883, No 124, as amended, which is an act to provide for the condemnation by cities, villages and counties of

private property for the use or benefit of the public, et cetera.

"The practice and proceedings of the recorder's court of the city of Detroit under this act, relating to the summoning and excusing of jurors and talesmen and to imposing penalties upon them for nonattendance, shall be the same as the practice and proceedings of said court relative to petit jurors for the trial of criminal cases, but no peremptory challenges shall be allowed." CL 1948, § 213.88 (Stat Ann § 8.60).

"Cities and villages now authorized under existing acts of incorporation, or other special acts, to take private property for public uses, may severally proceed, under the provisions of their respective local charters, or other special acts, or under the provisions of this act; and this act shall not be construed as in any way affecting or impairing the provisions of such local charters or special acts on the subject of taking private property for public use." CL 1948, § 213.94 (Stat Ann § 8.66).

CL 1948, § 213.76 (Stat Ann § 8.48), a section of the above-cited act, does not allow any peremptory challenges in condemnation proceedings brought under that act.

The court was not in error in limiting the defendants to 6 peremptory challenges collectively, under the charter provision. Defendants are incorrect in relying on provisions for challenges in statutes which are not applicable in the instant proceeding.

Defendants further claim that the slum clearance condemnation proceeding is unconstitutional because the real estate, while taken for a public use, is, after objectionable buildings are razed, to be sold for redevelopment by private persons and that, considering the purposes of the condemnation as a whole, the proposed action is improper and unconstitutional, as condemning the lands of one private person to

be devoted to the uses and purposes of another private person. Defendants cite *Board of Health of Township of Portage* v. *Van Hoesen,* 87 Mich 533 (14 LRA 114). In that case we held irrelevant, incongruous and void, an amendment to an act (How Stat §§ 4763–4777) which as it originally stood was an act to encourage formation of, private cemetery corporations, but the later amendment undertook to confer on boards of health, public corporations, the power of condemnation of lands for public purposes. However, in that case we did not say that a properly drawn, suitably entitled act, could not be upheld which would confer on the public corporations the right to maintain condemnation of lands for the public purposes involved.

The provisions of the Detroit city charter involved in the case at bar are not subject to the objections raised in the *Board of Health Case,* above cited.

In *Berrien Springs Water-Power Co.* v. *Berrien Circuit Judge,* 133 Mich 48 (103 Am St Rep 438), we held, page 52, that the water power sought to be developed by condemnation, was private in its character and land cannot be condemned for the purpose of creating it. The question to be submitted to the condemnation authority in that case is stated on page 55 as, "Does public necessity require that the land specified in relator's petition shall be taken to so improve the navigability of St. Joseph river that relator can operate thereon a transportation business and can obtain thereby the water power it desires?" The question of necessity in that case embraced at one and the same time, navigability (a public use) and water power (a private use). The act authorizing a determination that public necessity requires a taking for private purposes, was held unconstitutional, in that (*Water-Power Co.*) case.

In *General Development Corp.* v. *City of Detroit,* 322 Mich 495, a suit instituted by a taxpayer, we held

slum clearance to be a public purpose, and held to have been properly dismissed a taxpayer's bill which failed to show how the taxpayer would be prejudiced by a subsequent sale of the lands (after clearance). But in contradistinction to a case involving interests of a taxpayer, who shall pay less taxes because of the subsequent sale of the land and deduction from the general fund necessary to be raised for the slum clearance, in the case at bar, on the objection of owners of lands sought to be condemned, we are called upon to decide whether the provision authorizing a sale subsequent to clearance is a commingling and combination of a private purpose with a public purpose.

It seems to us that the public purpose of slum clearance is in any event the one *controlling* purpose of the condemnation. The jury were not asked to decide any necessity to condemn the parcels involved for any purpose of resale, but only for slum clearance. The one purpose of the instant proceeding (a public purpose) then is different from the 2 purposes in the *Water-Power Case, supra,* in which the 2 purposes were concurrent; the height of the water to be attained and consequent area and extent of lands to be condemned was decisive of both the amount of power, a private purpose and navigability, a public purpose.

In the instant case, the resale [abating part of the cost of clearance] is not a primary purpose and is incidental and ancillary to the primary and real purpose of clearance. Reconstruction was asked for in the petition and resale is necessary for such purpose, but the resale is not for the purpose of enabling the city nor any private owner to make a profit.

The supreme court of Tennessee in *Nashville Housing Authority* v. *City of Nashville,* 192 Tenn 103 (237 SW2d 946), say on page 948:

"To remove health, crime and fire hazards by slum clearance, is clearly a proper and reasonable exercise of the police power. This removal is effected by slum clearance *simpliciter* and the fact that under the subsequent rehabilitation or restoration, the cleared area under a project planned and supervised by the housing authority passes into private hands to private property is an incident which does not change the nature of the slum clearance as being a public improvement in the public interest."

Slum clearance with incidental resale is approved (1) by the Alabama supreme court, *Opinion of the Justices*, 254 Ala 343 (48 So2d 757), opinion of the justices on questions propounded by the governor; (2) by the supreme court of Illinois in *Zurn* v. *City of Chicago*, 389 Ill 114 (59 NE2d 18), and in *People, ex rel. States Attorney*, v. *City of Chicago*, 394 Ill 477 (68 NE2d 761); (3) and by the Pennsylvania supreme court in *Belovsky* v. *Redevelopment Authority of Philadelphia*, 357 Pa 329 (54 A2d 277, 172 ALR 953).

In *Dyer* v. *Township of Burns*, 228 Mich 513, in a suit by private individuals to enjoin issuance of bonds authorized by the electors for the purpose of erecting, furnishing and improving the town hall, the plaintiffs alleged that the township officials did not intend to build a town hall but a building to be used as a place for public entertainment. The trial court found the officers had proceeded in good faith to erect a town hall for township purposes. While the building might incidentally be used for other purposes, under such finding we affirmed the trial court's decree dismissing the bill.

In *Cleveland* v. *City of Detroit*, 322 Mich 172, we say (syllabus 9):

"Condemnation proceedings for the acquisition of so much and no more property than is necessary for a permissible public use will not be defeated by the

mere fact that an incidental private benefit or use of some portion of such property will result."

We find in the instant case as claimed by appellee city.:

"It was not the purpose of this condemnation proceeding to acquire property for resale. It was to remove slums for reasons of the health, morals, safety and welfare of the whole community."

We consider that the weight of authority is in favor of the appellee city's contention that the taking of private property for the uses and purposes as disclosed hereinbefore in this opinion is constitutional, notwithstanding the fact that the property taken is later to be resold to diminish the cost. involved in the condemnation and for the purpose of reconstruction.

By the foregoing rulings as to permissible challenges and as to constitutionality of the proceeding, we dispose of and dismiss appeals of all appellants, so far as based on those grounds.

Appellants American Pipe & Supply Company, of which the Brant Brothers, hereinafter referred to as Brants, are the owners, have claimed additional error on the part of the trial court in denying "conse-. quential" damages in the taking of parcel 280, part of which is a warehouse used by Brants as a part and parcel of Brants' business. They had offered testimony tending to show that the warehouse, being part of parcel 280 in question, was part of and necessary to the running of their plumbing supply business conducted at Gratiot and Orleans, 3 blocks away, which business, however, is not located on a parcel being condemned.

Brants claim that parcel 280 consists of adjoining buildings 40 to 50 years old on land approximately 150 feet by 105 feet. Two buildings are of garage type and were used for warehouse purposes; the

third building consists of 2 stores and a flat above. The entire property, after having been on the market for some time, was purchased in 1946 for $27,500 plus a $2,500 commission. Brants claim they installed fixtures of the value of $6,240.67. The jury could be justified in concluding that there had been no enhancement in value of the parcel during Brants' ownership, except for the fixtures. The value placed on parcel 280 by petitioner's appraiser was $38,000 and by appellants' appraiser, $55,000. The jury's award was $40,000. The fixtures and equipment put in by Brants (bins and storage racks, conveyor, hoist and a sign), all of which are removable, are not to be taken by the city in the condemnation, but remain the property of appellants.

Parcel 280 with the 3 buildings adjoining each other, is situated at the southwest corner of Chestnut and Riopelle streets in the city of Detroit. The easterly building is 2 stories in height, 40 feet in width and 105 feet in depth. The front portion of both stories is rented out for stores and rooms, and the rear portion of both stories is used for storage space. The middle section and the westerly section are both single-story buildings, having a depth of 105 feet, the former being 50 feet wide, and the latter 40 feet. Both of these buildings were unheated and used for storage purposes. The west building had been leased to a third party who moved from the premises about the time the instant proceedings were begun because the tenancy was uncertain. It will thus be seen that Brants were using only the narrower building in the center and only a portion of the east building for their own storage purposes.

Brants have their place of business in a building 100 feet by 140 feet having 3 floors and situated 3 blocks away from parcel 280. They are in the plumbing supply business and utilize the warehouse space they occupy in parcel 280, as hereinbefore

designated, for storage of soil pipes, water pipes, bath tubs and other plumber's supplies in connection with their business.

Parcel 280 was purchased by the appellants on March 1, 1946. The instant proceedings for condemnation were begun slightly less than 1 year later. Previous to that time, the appellants had a warehouse opposite their place of business. They claim that during the short period of slightly less than 1 year, during which they occupied part of parcel 280, it became such an integral part of their business that they are entitled to consequential or severance damages in addition to the compensation found by the jury for parcel 280.

On the trial the following occurred:

"*Mr. Shapero* [attorney for Brants]: There's another question that you have to pass on, a garage on Chestnut and Riopelle which is run in connection with the store on Gratiot avenue which isn't being taken by condemnation and we expect to show consequential damages by reason of separation of the 2 parcels.

"*The Court:* I won't allow you to show that."

In considering the court's ruling, we note that Mr. Shapero had previously elicited from his witness, Mr. Sexauer, testimony as to his opinion of the fair market value of parcel 280 as a whole, comparable with other buildings *in the market,* with the consequence that there was testimony that parcel 280 could be replaced, so far as concerns the portion of Brants' business which was there conducted, by other comparable buildings. There was no ground left for consequential damages. After Brants' witness Sexauer had given the testimony, above referred to, Mr. Albert Brant testified that he couldn't get any property to use instead of parcel 280, thus in effect contradicting his own witness Sexauer. The

court could be considered as justified if he disregarded such contradictory testimony by Brant. Because capable of being replaced for integrated use, the lands of Brants differ from the parcels in an integrated use described in *Baetjer* v. *United States* (CCA), 143 F2d 391 (cert denied 323 US 772; 65 S Ct 131, 89 L ed 618), upon which case Brants, appellants in this case, rely.

Brants had been permitted to show the various features of parcel 280, and the goods handled therein, cost of installation of bins, racks, hoist and other fixtures necessary to Brants' use of the parcel, some of which fixtures were movable. The jury award of $40,000 can be considered just compensation in view of the whole situation.

Under all the circumstances shown in the record, Brants were justly considered by the court as being without right to make further showing as to consequential (severance) damages.

The judgment confirming the award by the jury is affirmed. Costs to appellee city against all appellants.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.