ROWE *v.* HOUSING AUTHORITY OF THE CITY
OF LITTLE ROCK.

4-9852                                        249 S. W. 2d 551

Opinion delivered June 9, 1952.

*John F. Park,* for appellant.

*Herschel H. Friday, Jr., O. D. Longstreth, Jr.,* and
*Pat Mehaffy,* for appellee.

ED. F. McFADDIN, Justice. This is a taxpayers suit,
attacking the constitutionality of certain provisions of
Act 212 of 1945, which Act is sometimes called the "Ur-
ban Redevelopment Law," or the "Blighted Area Law."
The Act 212 gives to any Housing Authority (established

under Act 298 of 1937 and/or amendatory acts) additional powers as regards socalled "blighted" areas.

## STATEMENT.

In his complaint, appellant alleged that he was a citizen and taxpayer of Little Rock; that the Housing Authority of Little Rock was attempting to act in this case under said Act 212 of 1945 and previous Acts; that the Housing Authority of Little Rock (hereinafter simply called "Housing Authority") had decided that an area of 10 city blocks in Little Rock was a "blighted area" within the purview of said Act 212; that plaintiff owned property in said 10 block area; that said Housing Authority was seeking to acquire all of said 10 block area even by eminent domain if necessary; that the Housing Authority proposed to "redevelop" said area under the provisions of said Act 212; that said Housing Authority would then resell to private persons some of such redeveloped property; and that public funds of the City of Little Rock would be used by said Housing Authority. The complaint named as defendants the Housing Authority of Little Rock, the five individuals acting as Commissioners of said Authority, the City of Little Rock, the Mayor, and the individual members of the City Council of Little Rock. Injunction was the relief sought. The constitutionality of said Act 212 was attacked by plaintiff on these four grounds, which we quote from his complaint:

"1. The taking by eminent domain of the real property comprising said redevelopment area is contrary to and violates the provisions of Art. 2, § 22 of the Constitution of Arkansas and § 1 of the Fourteenth Amendment to the Constitution of the United States of America in that such taking is a taking for a private use as distinguished from a public use.

"2. The expenditure of public funds derived from taxing all of the real and personal property subject to taxation by the defendant City, including the property of this particular plaintiff located both within and without the redevelopment area, for the purpose of installing

said site improvements in the redevelopment area and the making of said cash grant to serve the ultimate objective of making said redevelopment area available for private use at a cost which may be less than the cost of acquiring and developing said redevelopment area, is contrary to and violates the provisions of Art. 16, § 1, as amended by Amendment 13, and Art. 12, § 5 of the Constitution of Arkansas.

"3. The exercise by the defendant Authority of governmental powers, legislative in character in determining the type, nature and extent of redevelopment projects, the use value to be placed on lands for redevelopment purposes, the selection of purchasers and lessees for such lands, and the terms and conditions for sales and leases, including covenants and restrictions for future use of such lands, is contrary to and in violation of Art. 5, § 1, as amended by Amendment 7 and Art. 4, §§ 1 and 2 of the Constitution of Arkansas.

"4. The sale or lease by the defendant Authority of land within the project area at its use value, which value may be less than the cost of acquisition and preparation for redevelopment, to private individuals or corporations or associations for redevelopment by them, is contrary to and in violation of Art. 2, § 3 and Art. 2, § 18 of the Constitution of Arkansas, in that such sale or lease grants to a citizen or class of citizens, privileges which do not equally belong to all citizens." [1]

The Chancery Court sustained a demurrer to the complaint and dismissed the cause when the plaintiff refused to plead further. From said decree of dismissal, there is this appeal. The complaint was filed in the Chancery Court on April 8, 1952; and on the same day, the defendants filed their demurrer, which was sustained. The decree of dismissal was made on April 8th; and the transcript filed in this Court the same day. Thus, it was only a matter of hours from the filing of the suit in the Chancery Court to the lodging of the appeal in this Court. Then attorneys for other property owners in the said

---

[1] There was a fifth ground alleged in the complaint, which related to "due process," but appellant now states that there is no merit to this point.

10 block area appeared in this Court, and claimed that the present suit was "too friendly" and sought to intervene here in order that the rule of *res judicata*[2] might not foreclose their clients in subsequent litigation involving factual questions.

Since intervention would be improper on appeal, the *parties to this litigation* made the following stipulation in this Court:

"Nothing in this litigation shall be adjudicated but the Constitutionality of the Acts and the actions of the Municipal Agencies thereunder. There shall be no adjudication of the facts, or basis upon which said Municipal Public Agencies arrived at their conclusions under said Acts and powers."

We honor the said stipulation and limit the present decision to the four constitutional questions previously set forth.

## DECISION

Housing Authority legislation is not a new subject in our jurisdiction. In *Hogue* v. *Housing Authority of North Little Rock*, 201 Ark. 263, 144 S. W. 2d 49, there was an attack on Act 298 of 1937[3] which was the first such legislation in this State. In the Hogue case, every constitutional point was presented that is urged in the case at bar save only one point subsequently to be mentioned; and in the Hogue case, this Court held the Housing Authority Act to be constitutional. In *Denard* v. *Housing Authority*, 203 Ark. 1050, 159 S. W. 2d 764, the Hogue case was reaffirmed.

Then by Act 352 of 1941,[4] the Legislature extended the Housing Authority legislation to include rural areas. This 1941 legislation was attacked as unconstitutional, but in *Kerr* v. *East Central Arkansas Regional Housing Authority*, 208 Ark. 625, 187 S. W. 2d 189, we upheld the original Housing Authority legislation, as well as the

---

[2] For application of *res judicata* in such a situation, see *McCarroll* v. *Farrar*, 199 Ark. 320, 134 S. W. 2d 561.

[3] See §§ 19-3001 *et seq.* Ark. Stats.

[4] See §§ 19-3030 *et seq.* Ark. Stats.

1941 amendment; and in the Kerr case, we quoted from the Hogue case:[5]

" 'We declare broadly and without reservation that (Act 298) creates a public agency or authority to perform necessary public purposes and uses.' "

We also said in the Kerr case:[6]

"The Hogue case, with its citation of authorities, refutes appellant's contentions that a County or City is without constitutional power to donate money for a public purpose in those instances where the General Assembly has designated the activity that is to be benefitted."

The cases above cited have decided adversely to the appellant every constitutional question here presented, except the one which relates to the right of the Housing Authority, after redeveloping the "blighted area" to then *resell* portions of the redeveloped property to individuals other than those whose property had been taken by the Housing Authority in the exercise of eminent domain. It is argued by plaintiff that the effect of such taking by eminent domain and reselling to other private individuals is to allow private property taken for so-called public use to be resold to other private individuals. This point is really the only material distinction between the Act 212 of 1945 and the Housing Authority Acts considered in our previous cases. But even on this point, we find that practically all of the Courts have held such Redevelopment Acts to be constitutional as against this objection.

The Court of Appeals of New York, in *Murray* v. *LaGuardia*, 291 N. Y. 320, 52 N. E. 2d 884, disposed of this point:

"Nor do we find merit in the related argument that unconstitutionality results from the fact that in the present case the statute permits the city to exercise the power of eminent domain to accomplish a project from which

---

[5] *Hogue* v. *Housing Authority*, 201 Ark. 263, 144 S. W. 2d 49.

[6] *Kerr* v. *East Central Arkansas Regional Housing Authority*, 208 Ark. 625, 187 S. W. 2d 189.

Metropolitan — a private corporation — may ultimately reap a profit. If, upon completion of the project the public good is enhanced it does not matter that private interests may be benefited.'"[7]

The Supreme Court of Pennsylvania had the same question under consideration in *Belovsky* v. *Redevelopment Authority*, 357 Pa. 329, 54 Atl. 2d 277, 172 A. L. R. 953; and used this language:

"One of the objections urged against the constitutionality of the Urban Redevelopment Act is the feature of the 'redevelopment project' which contemplates the sale by the Authority of the property involved in the redevelopment, it being claimed that thereby the final result of the operation is to take property from one or more individuals and give it to another or others. Nothing, of course, is better settled than that property cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another, even though there be involved in the transaction an incidental benefit to the public. But plaintiff misconceives the nature and extent of the public purpose which is the object of this legislation. That purpose, as before pointed out, is not one requiring a continuing ownership of the property as it is in the case of the Housing Authorities Law in order to carry out the full purpose of that act, but is directed solely to the clearance, reconstruction and rehabilitation of the blighted area, and after that is accomplished the public purpose is completely realized. When, therefore, the need for public ownership has terminated, it is proper that the land be re-transferred to private ownership, subject only to such restrictions and controls as are necessary to effectuate the purposes of the act. It is not the object of the statute to transfer property from one individual to another; such transfers, so far as they may actually occur, are purely incidental to the accomplishment of the real or fundamental purpose."

To cite, much less discuss, all of the cases involving Housing Authority legislation, would consume pages.

---

[7] *Certiorari* was denied in this case by the United States Supreme Court, 321 U. S. 771, 88 L. Ed. 1066.

Most of these cases are collected in the Annotations in 130 A. L. R. 1069 and 172 A. L. R. 966. See, also, *Redfern* v. *Board of Commissioners of Jersey City, et al.,* 137 N. J. L. 356, 59 A. 2d 641; *In the Matter of Slum Clearance in the City of Detroit,* 331 Mich. 714, 50 N. W. 2d 340; and *Opinion to the Governor,* 76 R. I. 249, 69 A. 2d 531. Regardless of the wisdom of the legislation, we cannot say that the Act 212 is unconstitutional as regards the four grounds on which it is here assailed.

The decree is affirmed.

Mr. Justice ROBINSON disqualified and not participating.