GOHLD REALTY COMPANY *v.* CITY OF HARTFORD ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued February 3—decided March 30, 1954

*I. Oscar Levine,* with whom were *Ethel S. Sorokin* and, on the brief, *Melvin S. Katz,* for the plaintiff.

*Hugh M. Alcorn, Jr.,* with whom was *Henry P. Bakewell,* for the defendants.

*T. Ward Cleary,* with whom, on the brief, were *Richard L. Reilly, George W. Crawford, Edmund J. Eshenfelder, Robert B. Devine, Orrin Carashick, Vincent J. Scamporino, George J. Finn, John M. Hanrahan, George J. Crocicchia* and *Joseph F. Dannehy,* appeared as amicus curiae.

INGLIS, C. J. This reservation poses the question whether the Connecticut Redevelopment Act, chapter 55 of the General Statutes as amended by §§ 383c-390c of the 1953 Cumulative Supplement, is unconstitutional.

The stipulated facts out of which this controversy arises are the following: On April 24, 1950, the common council of the city of Hartford adopted the provisions of the Redevelopment Act and created a redevelopment agency. Arrangements were then made with the United States in accordance with the provisions of title 1 of the federal Housing Act of 1949 (63 Stat. 414, 42 U.S.C. § 1451 [Sup. 5, 1952]) whereby the federal government has undertaken to make certain financial grants in aid of the execution of the redevelopment plan hereinafter described with the result that the federal government will

bear two-thirds and the city one-third of the net financial loss incurred. It is contemplated that the city will expend an estimated amount of $209,000 for the construction of streets and related improvements in connection with the project and will make a cash grant in the amount of $346,000. All of the municipal outlays of money will be provided by the sale of general obligation bonds of the city.

The redevelopment agency, in May, 1953, adopted a plan in minute detail for the redevelopment of the so-called Front-Market area. This plan complies with the requirement of the statute. Cum. Sup. 1953, § 384c. It delineates the area as containing two city blocks bounded by Market, Talcott, Front and State Streets with two extensions into adjacent blocks. It sets forth the finding of the agency that the area, located one block east of the central shopping districts and in one of the oldest parts of the city, is deteriorated, substandard and detrimental to the safety, health, welfare and morals of the residents of the city. This finding is supported by a large body of facts relating to the nature, structure, substandard condition and disrepair of the buildings and the high incidence of crime, juvenile delinquency and disease in the neighborhood. The finding states that the area is presently occupied by residential, commercial and light industrial buildings with some parking lots and that many of the buildings are used for both commercial and residential purposes. The description of the area contained in the plan is that of a typical slum.

On the basis of the findings of the agency it is proposed, as stated in the plan, to acquire, through purchase or otherwise, including the exercise of the power of eminent domain. all of the real property in the area and to demolish the structures, clear the

site and provide for the redevelopment thereof. The redevelopment will involve a relocation of streets and utilities and a devotion of the area to retail and wholesale business and parking facilities. When the land is cleared, it will be offered for sale or lease at a fair value to redevelopers. Full opportunity will be given potential redevelopers to submit offers. The sale or lease of the property will be conditioned on the development and use of the property in conformity with the redevelopment plan. The plan also sets forth the methods to be adopted for providing housing for those persons who presently live within the area and for financing the project.

The area in question now consists partly of vacant or unimproved land and land with some structures not in themselves substandard or insanitary but which have been found by the agency to be essential to the completion of an adequate unit of development.

The plaintiff is a taxpayer of the city of Hartford and owns certain commercial real estate within the area, at the corner of State and Market Streets. In the event that the redevelopment plan is carried out and the plaintiff is not willing to sell its property, the defendants will acquire it by condemnation proceedings.

The questions propounded are set forth in the footnote.[1] They divide themselves into three groups.

---

[1] "a. Is the Connecticut Redevelopment Act (Section 979-988 of the General Statutes of Connecticut as amended by Sections 248b-250b of the 1951 Cumulative Supplement to the General Statutes and Public Act No. 347 Acts of 1953) constitutional in that it authorizes the City of Hartford to acquire by the exercise of the power of eminent domain all the land and structures comprising the so called Front-Market Project area for the purposes of (1) demolishing the structures in said area and clearing the site thereof; (2) in improving said site

First, questions (a) and (b) are whether the Redevelopment Act is unconstitutional in granting to the city of Hartford the power of eminent domain to acquire the property involved in the Front-Market project even though a portion of that property is not substandard.  Second, question (c) is whether the act is unconstitutional in permitting the use of public funds for financing the cost of acquiring, improving and disposing of the property within the area.  Third, question (d) is whether the act, by giving the agency authority to select redevelopers and to determine the conditions and restrictions under which the property shall be used, is an unconstitutional delegation of legislative powers.

Section 982 of the General Statutes provides that a redevelopment agency such as that set up in the city of Hartford "may acquire real property by eminent domain . . . in accordance with the pro-

---

for redevelopment; and (3) disposing of the land comprising such area for private use in accordance with the redevelopment plan?

"b. If the answer to question (a) is in the affirmative, can the City of Hartford acquire by eminent domain vacant and unimproved land and such structures as may not in themselves be substandard or insanitary which have been found to be essential to complete the acquisition and development of said deteriorated, substandard and detrimental area?

"c. Is said Connecticut Redevelopment Act constitutional in that it permits the use of public funds, including funds derived from the levying of taxes and the issuance of general obligation bonds by the City of Hartford, for the purpose of aiding in financing the cost of the acquisition of said Front-Market Project area, installation of site improvements and disposition of said area as aforesaid?

"d. Does the authority conferred by said Connecticut Redevelopment Act to select and designate a redevelopment area, to select the purchasers or lessees of the real property located in a redevelopment area, to determine the consideration to be paid for the sale or lease of such property and to determine the conditions and restrictions under which such property shall be re-used, constitute an unlawful delegation of legislative power?"

visions of section 7181." It is fundamental that, as an attribute of sovereignty, the state government or any properly designated agency thereof may take private property under its power of eminent domain if the taking is for a public use and if just compensation is paid therefor. Conn. Const. Art. I § 11; *Northeastern Gas Transmission Co.* v. *Collins,* 138 Conn. 582, 586, 87 A.2d 139. Such a taking does not deprive a person of his property without due process of law in violation of the fourteenth amendment to the United States constitution if the procedure prescribed accords him a fair hearing. In the present case there is no claim that the procedure provided by § 7181 of the General Statutes is defective. The principal contention of the plaintiff with reference to questions (a) and (b) is that the proposed taking of its property is not for a public use.

"In this State it is settled that public use means 'public usefulness, utility or advantage, or what is productive of general benefit; so that any appropriating of private property by the State under its right of eminent domain for purposes of great advantage to the community, is a taking for public use.' *Olmstead* v. *Camp,* 33 Conn. 532, 546; *Todd* v. *Austin,* 34 Conn. 78." *Water Commissioners* v. *Manchester,* 87 Conn. 193, 204, 87 A. 870. Whether the purpose for which a statute authorizes the condemnation of property constitutes a public use is, in the end, a judicial question to be resolved by the courts; *Farist Steel Co.* v. *Bridgeport,* 60 Conn. 278, 291, 22 A. 561; but, in resolving it, great weight must be given to the determination of the legislature. See *New York, N.H. & H.R. Co.* v. *Long,* 69 Conn. 424, 436, 37 A. 1070.

By § 383c of the 1953 Cumulative Supplement, the General Assembly made a declaration of public pol-

icy with reference to redevelopment. It found that there "exist in municipalities of the state substandard, insanitary, deteriorated, slum or blighted areas which constitute a serious and growing menace, injurious and inimical to the public health, safety, morals and welfare of the residents of the state; that the existence of such areas contributes substantially and increasingly to the spread of disease and crime, necessitating excessive and disproportionate expenditures of public funds for the preservation of the public health and safety, for crime prevention, correction, prosecution, punishment and the treatment of juvenile delinquency and for the maintenance of adequate police, fire and accident protection . . .; that this menace is beyond remedy and control solely by regulatory process in the exercise of the police power and cannot be dealt with effectively by the ordinary operations of private enterprise without the aids herein provided; that the acquisition of property for the purpose of eliminating substandard, insanitary, deteriorated, slum or blighted conditions thereon or preventing recurrence of such conditions in the area, the removal of structures and improvement of sites, the disposition of the property for redevelopment incidental to the foregoing, the exercise of powers by municipalities acting through agencies known as redevelopment agencies as herein provided . . . are public uses and purposes for which public money may be expended and the power of eminent domain exercised."

In the act, a redevelopment area is defined as one "which is deteriorated, substandard or detrimental to the safety, health, morals or welfare of the community." Cum. Sup. 1953, § 384c. It is with reference to such an area that a local redevelopment

agency is authorized to prepare a plan for redevelopment and, in the execution of the plan, take private property by condemnation. Cum. Sup. 1953, §§ 383c-385c; General Statutes § 982. In the light of considerations such as those set forth in the legislative declaration of policy quoted above, there can be no doubt that the elimination of such substandard, insanitary, deteriorated, slum or blighted areas as are described therein and in the portions of the statute which authorize condemnation is for the public welfare. Private property taken for the purpose of eradicating the conditions which obtain in such areas is taken for a public use.

The Redevelopment Act contemplates that after an area is taken for redevelopment purposes some, or even all, of the land taken may be sold or leased to private individuals, referred to as redevelopers, even if they are not the original owners. General Statutes § 984. That is to say, the act authorizes the exercise of the power of eminent domain to take a man's property from him and sell or lease it to another. The plaintiff contends that this is not a proper exercise of the power because, although the original taking may be for a public purpose, the ultimate disposition of the property is not for a public use. The answer to this contention is obvious. The purpose of the act is not only to remove slums and blighted areas but also to prevent the redeveloped areas from reverting to their former status. Cum. Sup. 1953, § 383c. This is accomplished by requiring as a condition of sales and leases of portions of the area to private persons that the property "shall be developed and used in accordance with the redevelopment plan." General Statutes § 984. If the public use which justifies the exercise of eminent domain in the first instance

is the use of the property for purposes other than slums, that same public use continues after the property is transferred to private persons. The public purposes for which the land was taken are still being accomplished. *Barnes* v. *New Haven,* 140 Conn. 8, 19, 98 A.2d 523; *International Paper Co.* v. *United States,* 282 U.S. 399, 408, 51 S. Ct. 176, 75 L. Ed. 410; *Chicago Land Clearance Commission* v. *White,* 411 Ill. 310, 316, 104 N.E.2d 236.

The plaintiff relies upon *Connecticut College* v. *Calvert,* 87 Conn. 421, 88 A. 633, and to a lesser extent upon *Evergreen Cemetery Assn.* v. *Beecher,* 53 Conn. 551, 5 A. 353. Neither of these cases is in point. In the former, it was held that the power of eminent domain could not be granted to a privately chartered college to the end that it might condemn property as a site for its operations. In the latter, the right to condemn was denied to a cemetery association where it appeared that the right of burial in the proposed cemetery would not be open to all on equal terms. The twofold distinction between those cases and the present is pointed up in the *Connecticut College* case. At page 427 we recognized that the exercise of eminent domain by the government itself or a public agency thereof is different from its exercise by a private person to whom the government has granted the power. And, in the second place, the basis of the decision is (p. 430) that when a private person is granted the power to appropriate property, it must be for a use to which "the public will have a common right upon equal terms, independently of the will or caprice of the corporation." Under the laws which purported to grant the power of eminent domain to Connecticut College and to the Evergreen Cemetery Association, the property sought to be condemned would not have been open

to the use of the public. Under the Redevelopment Act, as has already been pointed out, the use of the property to be taken and the prevention of the recurrence of slum conditions are clearly uses for the benefit of, and to be enjoyed by, the public at large without restriction. These uses will continue in the public whether title to the land stays in the city or is transferred to private persons.

It is, of course, conceivable that the power of eminent domain granted by the act may be abused in some isolated instances. There may be attempts to use it for some ulterior purpose not contemplated by the act. See *Farist Steel Co.* v. *Bridgeport,* 60 Conn. 278, 292, 22 A. 561; *Schneider* v. *District of Columbia,* 117 F. Sup. 705, 716. Such a possibility does not militate against the constitutionality of the act, which very clearly delimits the purposes for which property may be condemned. When taken for those purposes, property will be subject to the public use. There is nothing in the stipulation of facts in the present case to indicate that the Hartford redevelopment agency will condemn land in the Front-Market area for any ulterior purpose. If, in some other case, it should be urged that a proposed taking is not in reality for a public use, we will have to consider that claim when it is made.

The plaintiff makes one other contention in connection with its claim that the grant of the power of eminent domain by the act is unconstitutional. That is that the grant of the power permits excessive condemnation. This contention is pointed up in the present case by the stipulated fact that the area to be redeveloped in accordance with the Front-Market project consists partly of vacant or unimproved land and partly of land with structures not in themselves substandard. It is also stipulated,

however, that the entire tract has been found by the agency to be essential to the completion of an adequate unit of development and has also been found to be, as a whole, deteriorated, substandard or detrimental.

The Redevelopment Act authorizes the taking of land in an area which has been determined by the agency to be a "redevelopment area." General Statutes § 982. In the definition of a redevelopment area, it is provided: "An area may consist partly or wholly of vacant or unimproved land or of land with structures and improvements thereon, and may include structures not in themselves substandard or insanitary which are found to be essential to complete an adequate unit of development, provided that the redevelopment area is deteriorated, substandard or detrimental." Cum. Sup. 1953, § 384c(b). Thus it is clear that the legislature has delegated to each redevelopment agency the power to determine, within certain limits, what property it is necessary to take in order to effectuate a complete redevelopment plan which the agency has adopted.

The determination of what property is necessary to be taken in any given case in order to effectuate the public purpose is, under our constitution, a matter for the exercise of the legislative power. When the legislature delegates the making of that determination to another agency, the decision of that agency is conclusive; it is open to judicial review only to discover if it was unreasonable or in bad faith or was an abuse of the power conferred. *Adams* v. *Greenwich Water Co.,* 138 Conn. 205, 213, 83 A.2d 177; *Water Commissioners* v. *Johnson,* 86 Conn. 151, 159, 84 A. 727; *Bridgeport Hydraulic Co.* v. *Rempsen,* 124 Conn. 437, 442, 200 A. 348. The Redevelopment Act is not violative of the constitu-

tion in that it permits a redevelopment agency to determine, in good faith, what land it is necessary to appropriate in order to accomplish the public purpose. It is proper for a redevelopment agency, acting in pursuance of the act, to fix, within reasonable limits, the area of redevelopment and to include in a taking all property which is in a deteriorated area, even though certain of the properties are not in themselves substandard. To grant such power is within the legislative function. *Oliver* v. *Clairton,* 374 Pa. 333, 342, 98 A.2d 47; *In re Housing Authority,* 233 N.C. 649, 660, 65 S.E.2d 761.

We conclude that the grant of the power of eminent domain contained in the Redevelopment Act is not unconstitutional and that the city of Hartford may acquire by eminent domain all property which the agency has determined to be essential to complete the acquisition and development of the area in question, including vacant and unimproved land and structures not in themselves substandard.

Question (c) as propounded in the reservation raises the issue whether the act is constitutional in authorizing, as it does, the city of Hartford to use its public funds for the purpose of financing the cost of acquisition of the Front-Market area, the installation of site improvements and the disposition of the area. The answer to this follows from what has already been said concerning the public character of the project. Since it is clearly a project for the public health, safety and welfare, it is one for which public funds may properly be expended. The act is not unconstitutional for the reason advanced. *Lyman* v. *Adorno,* 133 Conn. 511, 516, 52 A.2d 702.

Question (d) in the stipulation raises the issue whether the Redevelopment Act is unconstitutional in that it contains an unlawful delegation of legis-

lative power to a redevelopment agency. It is, of course, fundamental that under the constitution all legislative power in this state rests in the General Assembly. That body, however, may delegate to an administrative agency the power to carry its enactment into effect by prescribing rules and regulations, provided adequate standards are set forth to guide the agency in so doing. *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 670, 103 A.2d 535; *State* v. *Stoddard,* 126 Conn. 623, 628, 13 A.2d 586; *Biz* v. *Liquor Control Commission,* 133 Conn. 556, 559, 53 A.2d 655. The contention of the plaintiff in this connection is that the act does not set up standards to guide an agency in determining either (1) what sort of area is to be selected for redevelopment or (2) what properties may be included in any selected area.

As regards the first, § 385c provides: "The redevelopment agency may approve any such redevelopment plan if . . . it finds that: (a) The area in which the proposed redevelopment is to be located is a redevelopment area; (b) the carrying out of the redevelopment plan will result in materially improving conditions in such area; (c) sufficient living accommodations are available within a reasonable distance of such area or are provided for in the redevelopment plan for families displaced by the proposed improvement, at prices or rentals within the financial reach of such families; and (d) the redevelopment plan is satisfactory as to site planning. . . ." A redevelopment area referred to in (a) is defined in § 384c (b) as "an area within the state which is deteriorated, substandard or detrimental to the safety, health, morals or welfare of the community." As used in this definition, the words "deteriorated" and "substandard" have reasonably defi-

nite meanings. Clearly, also, that which is detrimental to the safety, health, morals or welfare of the community is sufficiently well defined. Consequently, the standards prescribed by the statute to control a redevelopment agency in the selection of an area for redevelopment are definite and adequate.

The contention of the plaintiff that the act does not prescribe standards to control the determination of what properties shall be included in a redevelopment area is without merit. As has already been pointed out, in the definition of a redevelopment area it is provided that it shall include all properties "which are found to be essential to complete an adequate unit of development." § 384c (b). The legislature could hardly have prescribed a more definite or illuminating guide.

Question (d) also asks whether the delegation to an agency of the power to select purchasers or lessees for the property and to determine the consideration to be paid by them and the conditions and restrictions under which they shall use the property is an unlawful delegation of legislative authority. Obviously it is not. Without discussing the matter in detail, suffice it to say that § 984 of the General Statutes prescribes adequate standards to guide an agency in this regard. We conclude that the act does not delegate legislative powers to an agency in violation of the constitution.

We find support for the conclusions we have reached in the overwhelming weight of the authorities in other jurisdictions. Legislation similar to our Redevelopment Act has been enacted in thirty-four states, the District of Columbia and four territories. In only two states has it been held unconstitutional.[2]

---

[2] *Adams* v. *Housing Authority,* 60 So. 2d 663 (Fla.); *Housing Authority* v. *Johnson,* 209 Ga. 560, 74 S.E.2d 891.

In at least fourteen jurisdictions where the legislation has been challenged on some or all of the grounds advanced by the plaintiff in this case it has been held valid.[3]

We answer the questions propounded in the stipulation as follows: (a) Yes. (b) Yes. (c) Yes. (d) No.

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.

---

[3] *Opinion of the Justices,* 254 Ala. 343, 48 So. 2d 757; *Rowe* v. *Housing Authority,* 220 Ark. 698, 249 S.W.2d 551; *Redevelopment Agency* v. *Hayes,* 122 Cal. App. 2d 777, 266 P.2d 105; *Schneider* v. *District of Columbia,* 117 F. Sup. 705; *Zurn* v. *Chicago,* 389 Ill. 114, 59 N.E.2d 18; *People ex rel. Tuohy* v. *Chicago,* 394 Ill. 477, 68 N.E.2d 761; *Herzinger* v. *Mayor & City Council,* 203 Md. 49, 98 A.2d 87; *In re Slum Clearance,* 331 Mich. 714, 50 N.W.2d 340; *Matter of Murray* v. *LaGuardia,* 291 N.Y. 320, 52 N.E.2d 884; *State ex rel. Bruestle* v. *Rich,* 159 Ohio St. 13, 110 N.E.2d 778; *Foeller* v. *Housing Authority,* 198 Ore. 205, 256 P.2d 752; *Belovsky* v. *Redevelopment Authority,* 357 Pa. 329, 54 A.2d 277; *Ajootian* v. *Providence Redevelopment Agency,* 91 A.2d 21 (R.I.); *Opinion to the Governor,* 76 R.I. 249, 69 A.2d 531; *Nashville Housing Authority* v. *Nashville,* 192 Tenn. 103, 237 S.W.2d 946; *Hunter* v. *Norfolk Redevelopment & Housing Authority,* 195 Va. 326, 78 S.E.2d 893.