Desmond, J.
Plaintiffs are owners and tenants of real property in the so-called “ Lincoln Square Project ” area on the west side of Manhattan running from 60th Street to 70th Street, bounded on the east and west by various streets and consisting altogether of 13 city blocks. Beginning in 1954, by appropriate actions of various of its public officers and bodies, the city, as authorized by section 1 of article XVIII of the State Constitution and section 72-k of the General Municipal Law (see Kaskel v. Impellitteri, 306 N. Y. 73, cert. denied 347 U. S. 934), found the Lincoln Square area to be “ substandard and insanitary”, approved a plan for renewal thereof and ordered its acquisition by the city through condemnation. To secure a grant of Federal moneys pursuant to the National Housing Act (U. S. Code, tit. 12, § 1701 et seq.), the city’s Board of Estimate presented to the Federal Urban Renewal Administration the city’s proposal for the “ Lincoln Square Urban Renewal Project ”. Before such presentation the city had obtained and had included in the plan agreements by various “ sponsors ”. Among those sponsors are intervenors Fordham University and Lincoln Center for the Performing Arts, Inc., a newly formed membership corporation with the principal function of promoting the musical and dramatic arts.
Each such sponsor agreed, as part of the Urban Renewal Plan, to bid, at the auction provided for by section 72-k of the General Municipal Law, a stated minimum price and, if it should be the successful bidder, to relocate the prior occupants, clear its part of the site and redevelop that part as required by the plan, with buildings to be approved by the city. Fordham University agreed as such sponsor to bid, for the two-block part set aside for “ educational purposes”, at least $2,241,610, or $7 per square foot, which was higher than the “ re-use value ” fixed by any of several appraisals. The city on its part agreed to acquire that allotted part (as well as the rest of the area) by condemnation, and, if Fordham University should be successful at the auction, to convey that part to the university at the auction price. Other sponsors made separate agreements which need not be described in detail. The Federal Housing and Home Finance Agency then approved the whole project and plan. The consequence of such approval is, under the Federal statutes (U. S. Code, tit. 42, § 1450 et seq.), that the Federal Government *275 will pay two thirds of the difference between what the city pays for this land and the amount realized at the auction. The city itself must stand the other third.
After the plan had been approved, as above described, plaintiffs brought this present suit to invalidate the plan and to enjoin the city from carrying it out. The theory of the complaint is that the resale of part of this area to Fordham University, a Roman Catholic institution, at a price lower than the price paid for that part by the city will be a direct subsidy of a sum in excess of $3,500,000 in violation of section 7 of article I of the New York State Constitution and of the First and Fourteenth Amendments to the United States Constitution, each of which constitutional provisions, say plaintiffs, forbids grants of public moneys to denominational institutions. After the institution of this suit the city, on February 28, 1958, took title to the project area by condemnation and conducted the auction at which Fordham University was the only bidder (at the previously negotiated price) for that part of the area which had been reserved for collegiate or educational purposes. Although the principal acts which the plaintiffs seek to enjoin have thus been performed, that in itself would be no bar to the further prosecution of the action, at least as praying for a declaratory judgment.
Special Term denied the motion of plaintiffs for a temporary injunction and for summary judgment and granted the motion of the defendants and interveners under rules 112 and 113 of the Rules of Civil Practice for dismissal of the complaint on the ground that it does not state a cause of action. Appellate Division, First Department, unanimously affirmed without opinion, judgment of dismissal was entered thereon, and plaintiffs appeal to this court as of right, presumably on constitutional grounds (Civ. Prac. Act, § 588, subd. 1, par. [a]).
Plaintiffs say that the condemnation of this land and the sale thereof to the university is completely void because Fordham is a denominational school and the sale to it, according to plaintiffs, at $7 per square foot of land for which the city will pay an estimated cost of about $16 per square foot would thus be an unconstitutional grant or subsidy of ■ public moneys to' a religious corporation. The argument, however, proceeds on an assumption false' in fact. Plaintiffs say that because the city *276 arranged to sell this land at a price much below what the city will pay for it, this necessarily amounts to a subsidy or gift. But what the city is buying is not the same as what Fordham is buying. The city buys land and buildings. Ford-ham buys the same property but subject to its agreement to raze the buildings, relocate the tenants and use the cleared land for a collegiate campus and buildings only. What Fordham is paying for is the re-use value of the land. There is in this record no dispute of the fact, found by both courts below, that the $7 per square foot which Fordham agreed to bid, and did bid, is at least equal to the re-use value as established by several appraisals, all of which reported figures lower than $7 per square foot. Therefore, there is no substance to the assertion, on which this whole suit depends, that Fordham is getting a gift, grant or subsidy of public property. It is, of course, getting a benefit in the sense that it is being permitted to acquire valuable and desirable property at a price which is probably lower than it would have to pay if it had to negotiate with all the private owners, but the private owners are getting from the city the full value of the property in its present condition and use. The city benefits by the achievement of its valid municipal purpose of eliminating a slum. The State and Federal statutes contemplate that the purchaser from the city will pay less than the city pays since it will always be the case that the city is buying land and buildings and selling either cleared land or land which the purchaser must agree to clear and use for restricted purposes.
Any collegiate institution could have been a bidder at the auction. Special Term pointed out, probably correctly, that Fordham would be deprived of constitutional rights if it alone were excluded from the bidding. Perhaps this is only another way of saying that, since this sale is an exchange of considerations and not a gift or subsidy, no 1 ‘ aid to religion ’ ’ is involved and a religious corporation cannot be excluded from bidding.
At some points in their argument plaintiffs seem to be questioning the validity of the whole system of selling these properties at auctions where there is little likelihood of competing bids. That contention must be rejected (see Kaskel v. Impellitteri, 306 N. Y. 73, 95, supra — dissenting opinion but representing the whole court’s views on that question; and see Bleecker *277 Luncheonette v. Wagner, 286 App. Div. 828, motion for leave to appeal denied 309 N. Y. 1029).
The judgment should be affirmed, with costs.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.