Albert E. Caccese Counsel NYS Office of Parks and Recreation
You state that in the 1979 Capital Budget the Legislature has reappropriated the sum of two hundred fifty thousand dollars ($250,000) to the Office of Parks and Recreation to be made available to the City of Binghamton for the restoration of the Old Binghamton City Hall. Such monies are to be made available in accordance with the provisions of Article 17 of the Parks and Recreation Law, which provides for grants-in-aid to municipalities for various purposes including the restoration of historic property.
You further state that the Old Binghamton City Hall is a structure of historic significance presently owned by the City of Binghamton; that it is listed on the National Register of Historic Places, having been nominated for such listing by the New York State Historic Preservation Officer; and that you are informed that the building is vacant, although usable if appropriate steps are taken for rehabilitation.
It appears further from your letter that the City does not have sufficient financial resources to complete the restoration, hence it obtained legislative authorization to lease the building to a private developer for a period of thirty years and at the end of the thirty-year period to transfer title to the property to the private developer, on the condition that all work done by the developer and the terms under which the developer may use and take title to the property are subject to approval of the Commissioner of Parks and Recreation (L 1977, ch 454).
You further state that in accordance with the provisions of such statute, the City invited the public to submit bids for the lease and development of the Old Binghamton City Hall and that the high bidder guaranteed the City the sum of $55,000 in consideration of the award and agreed to invest an additional two hundred fifty thousand dollars ($250,000) toward the restoration of the building.
Under the proposed lease the developer agrees to restore the building in accordance with requirements of the Commissioner of Parks and Recreation to assure the preservation and protection of the historic aspects of the building. In addition, the developer has agreed to accept, in both the lease and deed, a requirement that the interior portions of the building which are of historic significance be maintained in accordance with standards established by the Secretary of the Interior for the maintenance of historic structures and be kept open to the public for certain days during the year. The standard form of agreement for the transfer of funds to municipalities pursuant to Article 17 of the Parks and Recreation Law is incorporated in the lease by reference, and its provisions are made binding upon the developer as well as upon the City. Copies of this agreement and of the lease have been submitted to the Department of Law.
The question has arisen whether the above-described arrangement violates either section 8 of Article VII of the State Constitution or section 1 of Article VIII thereof, which prohibit a gift of State or of municipal money or property to a private individual, and you request my opinion with respect thereto.
It may be stated unequivocally at the outset that historic preservation is a valid public purpose. The preservation of structures with special historic, cultural or architectural significance serves a public purpose by "enhancing the quality of life for all". Penn Central TransportationCompany v City of New York, 438 U.S. 104, 108 (1978).
The Legislature has found that "the existence of irreplaceable historic resources which give character and distinction to our communities and to the State are threatened by the forces of change." Parks and Recreation Law, § 11.01. The 1977 legislation to which you refer, which authorized the conveyance of the Old Binghamton City Hall to a private developer on terms acceptable to the City and to the Commissioner of Parks and Recreation, gave expression to the legislative policy to preserve "irreplaceable historic resources".
The constitutional prohibitions of a gift of public funds to a private person do not, in my opinion, operate to prevent the contemplated arrangement. The Constitution is suffused with prohibitions against the exercise of public power for private benefit, yet it is well established that incidental private benefit will not invalidate a project which has for its primary object a public purpose. Denihan Enterprises, Inc. vO'Dwyer, 302 N.Y. 451, 458 (1951); Hotel Dorset v Cultural Resources,46 N.Y.2d 358, 371 (1978); Yonkers Community Development Agency vMorris, 37 N.Y.2d 478, 482 (1975); Murphy v Erie County, 28 N.Y.2d 80,87-88 (1971).
Specifically, in the situation you present the developer has obtained the lease with a high bid of $55,000 under an arrangement whereby it will obtain complete title to the Old Binghamton City Hall at the end of a thirty-year period. A substantial infusion of public funds will supplement the developer's own investment in rehabilitation of the Old City Hall for commercial reuse.
The primary purpose of the arrangement is clearly to preserve a national landmark; that is, to serve a valid public purpose. The developer is bound to restore and maintain the building in accordance with State and Federal requirements which will ensure the preservation of the historic qualities of the Old City Hall. These conditions will survive the termination of the lease.
There is no "gift" of public funds where consideration is provided for the grant. The developer is here fulfilling a public purpose.
See, Sun Publ. Assn. v Mayer, 152 N.Y. 257 (1897), and Admiral RealtyCo. v City, 206 N.Y. 110, 136 (1912), where the public purpose served by a below-cost rental was the improvement and operation of New York City's subway system.
Abundant analogies are to be found in urban renewal. There, public funds acquire and prepare a site, then dispose of it at reuse value to private developers with convenants which ensure compliance with the community plan. the reuse value may appear to be substantially lower than the public acquisition cost, and while in this jurisdiction, the issue has been muted by the adoption of Article XVIII of the Constitution specifically endorsing urban renewal (but see, Yonkers Community Development Agency vMorris, supra, 37 N.Y.2d at 483), in other jurisdictions the issue has been presented whether such urban renewal dispositions violate the constitutional prohbition against a gift of public funds to a private undertaking. The decisions overwhelmingly hold that no constitutional violation is present. See, e.g., Club Jolliet, Inc. v Manchester,262 A.2d 844, 847 (N.H. 1970); State ex rel. Dalton v Land Clearance,364 Mo 974, 270 S.W.2d 44, 52-53 (1954); Redevelopment Agency v Hayes,266 P.2d 105, 125 (Cal, 1954) cert den 348 U.S. 897; Gohld Realty vHartford, 141 Conn. 135, 104 A.2d 365, 372 (1954); Nichols on Eminent Domain (3d ed.), § 7.51561.
The government's "loss" on resale of the urban renewal site for private development according to plan is justified as incidental or necessary to the accomplishment of the public purpose of overcoming blight and creating a decent environment. Moreover, in view of the consideration provided by the developer, the transaction does not represent a loss. See, 64th St. Residences v City, 4 N.Y.2d 268, 276 (1958), cert den357 U.S. 907.
Similarly, the $55,000 bid received by the City of Binghamton represented the value of the site subject to the onerous conditions accepted by the private developer, no gift or subsidy is involved, and hence no constitutional violation is presented.