RICHARD N. CAFRO ET AL. *v.* LAWRENCE P. BROPHY ET AL.
(AC 18478)

Lavery, C. J., and Spear and Mihalakos, Js.

Argued April 4, 2000—officially released March 6, 2001

*Hugh F. Keefe*, for the appellants (defendants).

*Matthew J. Collins*, for the appellees (plaintiffs).

*Opinion*

SPEAR, J. The defendants[1] appeal from the judgment, rendered after a trial to the court, in favor of the plaintiffs, Richard N. Cafro and Janey L. Cafro, on their claim that the defendants breached certain warranties when they sold a house to the plaintiffs. The defendants' reviewable claims are that the court improperly (1) allowed rebuttal evidence through an expert witness whom the plaintiffs had not timely disclosed and limited surrebuttal, (2) ruled that the alleged defects were discovered prior to the expiration of the warranties, (3) ruled that a disclaimer of warranties in the sales contract was ineffective and (4) based its award of attorney's fees under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., on conduct that was not alleged in the complaint.[2] We

---

[1] Lawrence P. Brophy, John G. Ahern and Frank W. Perrotti, Jr., are the defendants in this action.

[2] The defendants make the following claims:

"I. Did the trial court err in holding that the defendants breached the express warranty contained in the sales contract and any implied warranty relating to the structural framework of the house when the purported defects in the plaintiffs' home were not discovered prior to the expiration of these warranties? . . .

"II. Did the trial court err in holding that the plaintiffs' warranty claims concerning the structure of their home were not time-barred when they were first asserted nearly three and a half years following plaintiffs' purchase of their home? . . .

agree with the defendants' claim pertaining to improper rebuttal testimony and reverse the judgment of the trial court.

"III. Did the trial court err in holding that the warranty disclaimer contained in the sales contract between the parties was legally ineffective when it was clear, conspicuous, signed by the plaintiffs, the result of actual negotiation between the parties, supported by substantial financial consideration and the language was actually provided by the plaintiffs themselves? . . .

"IV. Even assuming the contractual warranty disclaimer was ineffective, did the trial court err in holding that the defendants breached any implied warranties? . . .

"V. Did the trial court err in allowing the rebuttal testimony of plaintiffs' experts Michael Culmo and Timothy Foreman? . . .

"VI. Having chosen to allow rebuttal testimony by Mr. Culmo and Mr. Foreman, did the trial court err in refusing to permit the defendants to offer surrebuttal evidence rebutting it? . . .

"VII. Did the trial court err in crediting the testimony of Michael Culmo and Timothy Foreman? . . .

"VIII. Did the trial court err in awarding damages based on Mr. Culmo's admittedly speculative testimony, and in ignoring the testimony of both Mr. Culmo and [the defendants' expert, Barry] Steinberg that the purported structural defects to which Mr. Culmo testified could be remedied for approximately $4000 rather than the $180,000 awarded by the trial court? . . .

"IX. Did the trial court err in excluding [the named defendant Lawrence P.] Brophy's proffered testimony concerning an unconditional offer to replace the plaintiffs' roof at no cost to them? . . .

"X. Did the trial court err in finding that the defendants had violated CUTPA?

"A. Did the trial court err in finding a CUTPA violation on the basis of claims never made by the plaintiffs? . . .

"B. Did the trial court err in drawing inferences in support of its view that defendants knowingly sold plaintiffs a defective house when those inferences were not reasonable based upon the evidence? . . .

"C. Did the trial court err in drawing an adverse inference from the defendants' decision not to call John G. Ahern as a witness when such an inference was factually and legally untenable? . . .

"D. Did the trial court err in holding that it was immoral, unethical, oppressive or unscrupulous for the defendants to rely on warranty disclaimer language which they reasonably believed to be legally effective?"

We decline to review claims II and X (D) because the court made no findings with reference to those claims, and the defendants failed to file a motion seeking articulation. See Practice Book § 66-5. The record, therefore, is inadequate for us to review. See Practice Book § 61-10.

We also decline to review claim IX with respect to Brophy's testimony. The defendants failed to follow Practice Book § 67-4 (d) (3), which provides:

The court found the following facts. The plaintiffs brought this action against the defendants in connection with the construction and sale of a single family home. On October 20, 1993, the plaintiffs and the named defendant, Lawrence P. Brophy, signed a sales agreement for the sale of real property at 263 High Street in Coventry for $218,000. Paragraph five of their agreement stated that the "buyer accepts home without any warranty express or implied except for the following: seller shall warranty for a period of one year, the structural integrity of [the] residence and that the major mechanical systems are operational." When Brophy signed the agreement, he substituted the word "frame" for the word "integrity," and the change was initialed by all parties so that the express warranty was limited to the "structural frame" of the dwelling rather than to its "structural integrity." Title was transferred on November 30, 1993.

The parties engaged in a contentious closing because Brophy insisted that the property was being sold in an

"When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."

Claims IV, VII, VIII and X (B) involve the court's credibility determinations and its decision as to breach of warranty and damages. Because we order a new trial, it is obviously unnecessary to address those claims.

Although we ordered supplemental briefing on claim X (C), we conclude that no review is necessary. It is unlikely that this issue will arise in the same legal and factual posture in the new trial. After the trial in this case, the "missing witness" jury instruction was eliminated in civil cases by General Statutes § 52-216c and precluded in criminal cases by *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000). We do not know if there will be any "missing witness" in the new trial or, if there is, whether the court will draw any adverse inference.

We address claim V in the first issue we discuss. Because we find claim V dispositive of this appeal, we do not reach claim VI. We also address claims I, III and X (A) because they will likely arise in the new trial.

"as is" condition subject only to the limited express warranty. The plaintiffs believed that the contractual warranty was an additional benefit that merely supplemented the defendants' obligations that the buyers assumed were naturally implicit in the sale of any new home by a builder to its new owners. Eventually, the closing was completed.

The court found that the defendants had breached the express and implied new home warranties found in General Statutes §§ 47-116 through 47-121. The court ruled that the disclaimer of warranty in paragraph five of the sales agreement was defective in that it did not set out in detail "the warranty to be excluded," as required pursuant to § 47-118 (d). The court concluded that the plaintiffs were therefore entitled to the protection of the statutory warranties of workmanlike construction and habitability. The court found the testimony of the plaintiffs' expert, Michael Culmo, to be very credible and discounted that of the defendants' expert, Barry Steinberg, because he had done so much work for the defendants.

The court found that the house had to be demolished from the second floor upward and replaced with a properly constructed superstructure that meets the requirements of the building code. The court awarded the plaintiffs $180,000 in damages for breach of the warranty and $25,231.50 on the CUTPA claim based on the attorney's fees that they incurred in prosecuting their claims to judgment. This appeal followed.

I

The defendants claim that the court improperly allowed Culmo, an engineer who was retained by the plaintiffs and disclosed for the first time near the conclusion of the defendants' case, to testify as an expert witness in the plaintiffs' rebuttal case. Culmo's testimony was that the structure was defective, not compli-

ant with the building code, and that it would have to be demolished from the second floor framing upward and rebuilt at a cost of $180,000.[3]

Practice Book § 13-4 (4) provides in relevant part: "[A]ny plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all parties within a reasonable time prior to trial. . . . If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subsection . . . such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party . . . ."

Near the conclusion of the defendants' case, the plaintiffs disclosed that they intended to call Culmo to testify in their rebuttal case. The defendants objected to that disclosure after the plaintiffs had rested their case-in-chief. The defendants claimed that the allowance of such testimony would be prejudicial to them. The court allowed Culmo to testify in rebuttal to the defendants' evidence. We agree with the defendants that such testimony should have been precluded.

Whether to admit rebuttal evidence rests within the sound discretion of the trial court. *Mezes* v. *Mead*, 48 Conn. App. 323, 331, 709 A.2d 597 (1998). Our standard of review of the defendants' claim is that of whether the court abused its discretion in allowing this expert testimony. Id., 332. "Discretion means a legal discretion,

---

[3] The defendants also argue that even if the court did not abuse its discretion in permitting Culmo to testify, the judgment must be reversed because the court thereafter improperly refused to allow them to present surrebuttal testimony. Because we conclude that the court abused its discretion in permitting Culmo to testify, we need not reach the defendants' claim pertaining to surrebuttal testimony.

to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Whalen* v. *Ives*, 37 Conn. App. 7, 21, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995).

Whether the house was structurally sound was a hotly contested issue in the trial. It was Culmo's testimony that the court apparently found persuasive in concluding that the structure would have to be demolished from the second floor upward at a cost of approximately $180,000. That was the exact estimate that Culmo gave in his testimony. That testimony, for which the defendants could not have been properly prepared, literally destroyed their case.

This case is almost on all fours with the facts of *Pie Plate, Inc.* v. *Texaco, Inc.*, 35 Conn. App. 305, 645 A.2d 1044, cert. denied, 231 Conn. 935, 650 A.2d 172 (1994). In *Pie Plate, Inc.*, the trial court precluded the testimony of the plaintiffs' expert, Dan Buzea, in the plaintiffs' case-in-chief because of a late disclosure of Buzea as an expert. "During the defendant's case-in-chief, one of the defendant['s] experts, Dennis Waslenchuk, relied on a report prepared by Buzea. On rebuttal, the plaintiffs offered Buzea's testimony regarding his report and his opinion regarding the source of the contamination on the basis of the report. The trial court again refused to permit Buzea to testify as an expert. The trial court did, however, grant permission for him to testify to the facts underlying his report. . . . The plaintiffs chose not to present Buzea at all." Id., 310.

Here, during the defendants' case-in-chief, the defendants' expert testified about a report prepared by Culmo. The court then allowed Culmo to testify in rebuttal. In *Pie Plate, Inc.*, we stated that "[t]he policy behind restrictions on the presentation of rebuttal testimony is that a plaintiff is not entitled to a second opportunity to present evidence that should reasonably have been presented in [its] case-in-chief. . . . We conclude that the trial court did not abuse its discretion by preventing Buzea from testifying as an expert on rebuttal. The plaintiffs had not disclosed him as a potential expert witness prior to trial. Thus, absent adequate time in which to prepare, the defendant would have been prejudiced." (Internal quotation marks omitted.) Id., 310–11.

The plaintiffs' argument that the court did not abuse its discretion is unpersuasive. The plaintiffs assert that the defendants failed to depose another expert whom the plaintiffs had disclosed and that the defendants' made a late disclosure of their own expert. Their argument that the defendants' failure to depose the other expert probably meant that they would not have deposed Culmo is unavailing. It is up to a party to determine whom to depose. The plaintiffs offer no authority in support of their assertion that simply because a defendant makes a late disclosure, the plaintiffs should be allowed a late disclosure for rebuttal. They also point to the fact that the defendants' expert testified at length regarding Culmo's report. As in *Pie Plate, Inc.*, that factor is unavailing. The plaintiffs alleged that the structure of the building was defective and had the opportunity to present Culmo's testimony in support of that claim in their case-in-chief.

We conclude that the court abused its discretion in allowing an expert who was first disclosed near the end of the defense case to testify in rebuttal in support of a claim that was part of the plaintiffs' case-in-chief. Although we reverse the judgment and order a new

trial, we will discuss certain other claims made by the defendants because they are likely to arise in the new trial.

## II

The defendants claim that there was no breach of any warranty because the alleged defects in the plaintiffs' house were not discovered prior to the expiration of the warranties. The defendants assert that the express warranty in the contract was limited to one year, and that the express and implied warranties pursuant to §§ 47-117[4] and 47-118[5] had expired before the plaintiffs discovered the alleged defects. That claim is without merit.

The court found that the plaintiffs took title to the house on November 30, 1993. The court also found that counsel for the plaintiffs notified the defendants on July 26, 1994, of the structural defects of their home, and on September 2, 1994, the plaintiffs' counsel notified the defendants of the plaintiffs' complaints about the other specific defects in the house. On the basis of those findings, the court properly concluded that the defects were discovered and that the defendants had been advised of the defects within the one year warranty period.

## III

The defendants claim that the disclaimer in the sales contract effectively disclaimed all warranties, including

---

[4] General Statutes § 47-117 (d) provides in relevant part: "An express warranty shall terminate: (1) In the case of an improvement completed at the time of the delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first . . . ."

[5] General Statutes § 47-118 (e) provides in relevant part: "The implied warranties created in this section shall terminate: (1) In the case of an improvement completed at the time of the delivery of the deed to the purchaser, one year after the delivery or one year after the taking of possession by the purchaser, whichever occurs first . . . ."

the new home warranties pursuant to §§ 47-117 and 47-118. Section 47-117 (c) provides in relevant part: "No words in the contract of sale . . . shall exclude or modify any express warranty made pursuant to subsection (a) of this section. . . ." The defendants offer no authority in support of their claim that the express warranties of § 47-117 were effectively disclaimed. They merely assert that the disclaimer had that effect. The defendants' claim is obviously without merit on the basis of the clear language of the statute.

General Statutes § 47-118 (d), relating to implied warranties, provides: "Neither words in the contract of sale, nor the deed, nor merger of the contract of sale into the deed is effective to exclude or modify any implied warranties, provided, if the contract of sale pertains to an improvement then completed, an implied warranty may be excluded or modified wholly or partially by a written instrument, signed by the purchaser, setting forth in detail the warranty to be excluded or modified, the consent of the purchaser to the exclusion or modification, and the terms of the new agreement with respect to it." The defendants claim that all of the requirements for exclusion set out in § 47-118 were met. We disagree.

The court ruled that the disclaimer was deficient in that it did not "set forth in detail 'the warranty to be excluded' as required under General Statutes § 47-118 (d). . . ." The defendants concede that they have found no appellate authority in this state with respect to the requirements for a disclaimer pursuant to § 47-118 (d).

We conclude that the legislative intent was clearly expressed in the words of § 47-118 (d). "If the language of a statute is plain and unambiguous, we need look no further than the words actually used because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *State* v. *DeFrancesco*, 235 Conn. 426, 435, 668 A.2d 348 (1995).

Section 47-118 (d) expressly provides that an effective disclaimer must set "forth in detail the warranty to be excluded or modified . . . ." The purported disclaimer here sets forth nothing about the warranties to be excluded. The statement that all warranties are excluded tells the buyer absolutely nothing. The language of the purported disclaimer falls so far short of complying with the disclaimer provisions of the statute that it warrants no further discussion.[6]

## IV

The defendants also claim that the court found a CUTPA violation on the basis of claims that the plaintiffs never made. Specifically, the defendants claim that the court's finding that the "defendants knowingly sold the plaintiffs a house with a number of serious defects" as a basis for the CUTPA violation was improper in that the plaintiffs never made such an allegation.

Our review of the record discloses that in the third count of the plaintiffs' complaint, they alleged that "prior to and at the time of sale of the property, the

---

[6] The plaintiffs note in their principal brief that "those jurisdictions which have addressed the issue in terms of either the implied warranty of habitability or a comparable statute have declined to find a waiver absent a conspicuous provision which fully discloses the consequences of its inclusion, but also that such was in fact the agreement reached. *Crawford* v. *Whitaker Construction, Inc.*, 772 S.W.2d 819, 822 (Mo. App. 1989). See also *Pontiere* v. *James Dinert, Inc.*, 426 Pa. Super. 576, 582, 627 A.2d 1204 (1993) (builder-vendor may not exclude the implied warranty of habitability absent particular language which is designed to put the buyer on notice of the rights he is waiving), appeal denied, 537 Pa. 623, 641 A.2d 588 (1994); *Starfish Condominium Assn.* v. *Yorkridge Service Corp.*, 295 Md. 693, 702, 458 A.2d 805 (1993) (contract asserting that property, appliances and fixtures bought as is lacked statutorily required specificity); *Casavant* v. *Campopiano*, 114 R.I. 24, 327 A.2d 831 (1974); *Dewberry* v. *Maddox*, 755 S.W.2d 50, 55 (Tenn. App. 1988) (waiver of implied warranties requires clear and unambiguous language in contract and notice to buyer of warranty protections being waived, and language of acceptance in its existing condition, no warranties or representation having been made by seller deemed insufficient)." (Internal quotation marks omitted.)

defendants *knew* or should have known said defects existed with the property and yet they continued to falsely represent to the plaintiffs that the property was free from said defects." (Emphasis added.) We construe that allegation as sufficient to allege that the defendants "knowingly sold the plaintiffs a house with a number of serious defects."

The judgment is reversed and the case is remanded for a new trial.

In this opinion MIHALAKOS, J., concurred.

LAVERY, C. J., dissenting. On the basis of the procedural history of this case, I respectfully dissent from part I of the majority's opinion. Contrary to the majority's view, the trial court did not abuse its discretion by permitting the testimony of the plaintiff's expert, Michael Culmo, on rebuttal, and Culmo's testimony was not prejudicial to the defendants.

The transcript of the trial demonstrates that both counsel for the parties failed to comply timely with the requirements of our rules of practice with respect to amended pleadings and the disclosure of expert witnesses. Apparently, the plaintiffs timely disclosed Timothy Foreman, a builder and an inspector, as an expert witness who testified during the plaintiffs' case-in-chief. Approximately five weeks before trial, the plaintiffs moved to amend their complaint to allege the defects to the structural frame of the house at issue in this appeal. The defendants did not object to the amendment in a timely fashion.[1] During trial, the defendants dis-

---

[1] The following colloquy took place on the day trial was to commence:

"[The Court:] And I understand, [plaintiffs' counsel, Matthew J.] Collins, that you filed a request to amend your complaint, and I believe it's the first request that has been made, isn't it, Mr. Collins?

"[Plaintiffs' Counsel]: Yes, it is, Your Honor.

\* \* \*

"[The Court:] The objection is dated today and states that the amended complaint adds new allegations of defects to the structural frame. Can you tell me what they are?

"[Defendants' Counsel, Allen A. Marko]: The allegations are that the floor

closed that Barry Steinberg, a structural engineer, would testify as an expert witness. Thereafter, the plaintiffs disclosed Culmo, a structural engineer, to rebut

is sloping, and the frame of the house has shifted, causing doors no longer to be able to close and causing the floors to crack.

"This is the first time allegations in the complaint have been made as to the actual structural frame and, therefore, Your Honor, because it is adding an entirely new part of the claim, we are requesting a continuance.

"This now reopens a part of the pleadings. While the time limit for objecting may have gone by, I still have time to file an answer and special defenses to that, and I'm also requesting time to have a structural engineer investigate this new claim. And the Practice Book section on amendments does allow the court to limit amendments or to add special orders to amendments that are allowed in the interest of justice, and I believe that in this case, where the amendment is coming so close to the trial date, I think that in the interest of justice and equity, it's required that we be given the time to properly investigate this claim coming out for the first time.

"The Court: Mr. Collins, first of all, is this the first claim of defects to the structural frame?

\* \* \*

"[Plaintiffs' Counsel]: Yes—that is, in regard to the structure of the roof. . . . [That has] been the big issue in the case.

"[The Court:] And by the way, who will be your expert with regard to the framing, the same expert? The same expert you will have for the roof?

"[Plaintiffs' Counsel]: Yes, yes. In fact, what precipitated this was we went back, he examined the house, and the house appears to be sagging, appears to be obviously in worse condition than it was.

"The Court: And when did you become aware of that?

"[Plaintiffs' Counsel]: It was probably the day or two before I filed the amended complaint.

"The Court: All right. And were you there in the company of the expert?

"[Plaintiffs' Counsel]: Yes, I was.

"The Court: And would you tell me the name of the expert?

"[Plaintiffs' Counsel]: Timothy Foreman.

\* \* \*

"[Defendants' Counsel]: Your Honor, the plaintiffs had filed a disclosure of expert. In that disclosure, they provided the expert's opinion. There was no mention made of these issues. These are coming up for the very first time, and there was no amendment to the notice of disclosure or the expert's report when it's claimed that this additional information was discovered.

"The Court: All right. One other problem you have, Mr. Marko, is that we're not dealing here with anything that's discretionary. We're talking now about Practice Book § 176 (c) [now § 10-60 (a)], and this amendment by consent, order of the court, or failure to object, and subsection (c) [now (a) (3)] says, 'If no objection thereto has been filed by any party within fifteen days from the date of the filing,' which would have been, I believe

Steinberg's testimony. Although the defendants objected strenuously, the court permitted Culmo to testify.[2] The court also permitted the defendants to intro-

. . . April 5th? 'The amendment shall,' and I read that as mandatory . . . . And I would indicate that for that reason, and that is the principal reason, the objection is overruled.

\* \* \*

"[The Court:] I would indicate, however, it's without prejudice to request on your part—to make evidentiary objections to the line of questioning, to this line of questioning with regard to structural defects . . . . Do you have an opposing expert, Mr. Marko?

"[Defendants' Counsel]: We have a person who was to come in, an architect, but not on this issue.

"The Court: Not on this issue?

"[Defendants' Counsel]: No.

"The Court: All right. I would suggest strongly that you advise him or try to obtain a qualified person in that regard. And for that purpose, I assume, Mr. Collins, the structure will be available to anyone that Mr. Marko designates to examine it.

"[Plaintiffs' Counsel]: Yes."

[2] After several days of evidence, the following colloquy took place:

"The Court: We're now resuming the *Cafro* matter, and I would point out . . . There's just been filed a disclosure of expert witness. I think you have it, do you not, Mr. Collins?

"[Plaintiffs' Counsel]: Yes, I just received it.

"The Court: All right. And this is in regard to Barry Steinberg. And was that inspection conducted with both attorneys present on Saturday?

"[Defendants' Counsel]: It was conducted Monday morning, Your Honor. I was not present. . . :

\* \* \*

"[Plaintiffs' Counsel]: I was not able to be present.

\* \* \*

"The Court: All right. . . . Why don't you just put on the record, Mr. Collins, what you indicated to me about a comparable witness that you had contacted.

"[Plaintiffs' Counsel]: Yes, Judge. Mr. Cafro over the weekend had a structural engineer by the name of Culmo, Michael Peter Culmo, do an assessment of the house and he generated a report which I've given to counsel, which is very particular in its examination and in its conclusions, and I would ask that—

"The Court: Let me ask you this, Mr. Collins. I suppose that was in connection with the retention of Mr. Steinberg?

"[Plaintiffs' Counsel]: Yes.

"The Court: As I indicated to counsel in chambers, much of the preparatory work with regard to expert testimony is being accomplished while the trial

duce additional testimony from Steinberg in surrebuttal.[3]

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . Sound discretion, by definition, means a discretion that is not exercised arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law . . . . And [it] requires a knowledge and understanding of the material circumstances surrounding the matter . . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . *State* v. *Orhan*, 52 Conn. App. 231, 237, 726 A.2d 629 (1999). Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice. *State* v. *Hernandez*, 204 Conn. 377, 390, 528 A.2d 794 (1987)." (Internal quotation marks omitted.) *Baughman* v. *Collins*, 56 Conn. App. 34, 35–36, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000). "[Our courts] will not overturn the trial court's evidentiary rulings in the absence of a showing that the trial court clearly abused its discretion and that the ruling likely affected the court's ultimate

---

is going on, and I'm taking judicial notice of that due to circumstances beyond our control.

"I would indicate at this point in time that I would at least, I'd like to have counsel review those two reports, and I would also indicate that after you have reviewed them, if counsel believe it will be in the interest of a full airing of all of the critical issues in this case upon which the court will have to rule, the court would be inclined, particularly if counsel can agree, to allow that additional evidence to have been given in spite of the fact that, as I've stated to you, the ordinary rules with regard to disclosure of expert witnesses prior to trial have been more [breached than honored] in the observance, as I've indicated to you in chambers."

[3] I also note that the court viewed the subject premises at the conclusion of testimonial evidence.

determination." *Connecticut Associated Builders & Contractors* v. *Hartford*, 251 Conn. 169, 190, 740 A.2d 831 (1999).

My view, based on my reading of the transcript, is that the patience of the trial judge was sorely tested by the lack of pretrial preparation on the part of trial counsel.[4] The court accommodated the late disclosure of expert witnesses by both sides, and permitted rebuttal and surrebuttal testimony to avoid prejudice to all concerned. Furthermore, the evidence elicited from Culmo was relevant and was not prejudicial to the defendants.

Prejudicial evidence is not evidence that is merely damaging. Culmo's testimony was relevant because it pertained to the structural integrity of the house, the central issue in the case. Relevant evidence should be excluded in situations "where the evidence offered and the counterproof will consume an undue amount of time [or] where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." *State* v. *DeMatteo*, 186 Conn. 696, 702–703, 443 A.2d 915 (1982). In this case, Culmo's relevant testimony was permissible because it did not consume an undue amount of time and did not surprise the defendants. Indeed, Culmo's testimony was no surprise to the defendants because they knew that the structural integrity of the house was at issue.

---

[4] The court explained its reasons for allowing all of the experts to testify in open court:

"The Court: But it would seem to me in fairness, in order not to—to avoid a proliferation of experts where there weren't any up until a few days before the trial would not be in the interest of efficiently disposing of this case; you understand that?

\* \* \*

"The confusion in this case has been generated by the conspicuous lack of preparation on the part of two of the three attorneys involved in this case, and I'm stating that now in the presence of your clients."

I also am of the opinion that the majority has confused prejudicial evidence with evidence that is merely damaging. "All evidence adverse to a party is, to some degree, prejudicial. To be excluded, the evidence must create prejudice that is *undue* and so great as to threaten an injustice if the evidence were to be admitted." (Emphasis in original.) *Chouinard* v. *Marjani*, 21 Conn. App. 572, 576, 575 A.2d 238 (1990). All of the experts testified that the structure of the house was compromised to some degree; the issues concerned the extent of repairs necessary to correct the problems and their related costs. The court heard evidence concerning the cost of the repairs, which ranged from less than $10,000—Steinberg's testimony—to more than $200,000. Culmo's estimate was neither the high nor the low figure before the court. I cannot overlook the fact that the court gave the defendants the opportunity to present surrebuttal evidence on the cost of repairs. I therefore conclude that the defendants' claim before this court that the trial court abused its discretion with respect to the admission of expert testimony by Culmo is without merit.

For those reasons, I respectfully dissent from part I of the majority's opinion, and I would affirm the judgment of the trial court.