# FRANK W. BUGRYN, JR., ET AL. *v.* CITY OF BRISTOL ET AL.

# CITY OF BRISTOL *v.* FRANK W. BUGRYN, JR., ET AL.

# CITY OF BRISTOL *v.* FRANK W. BUGRYN, JR. (AC 20511)

Lavery, C. J., and Foti and Peters, Js.

Argued February 22—officially released April 24, 2001

*Bridget C. Gallagher*, with whom, on the brief, was *Anthony A. Denorfia*, for the appellants (plaintiffs in the first case, defendants in the second and third cases).

*Brian T. Henebry*, for the appellees (defendants in the first case, plaintiff in the second and third cases).

*Opinion*

FOTI, J. The plaintiffs,[1] owners of certain parcels of land in the city of Bristol, appeal from the trial court's judgments denying their requests for injunctive relief against the defendants.[2] The plaintiffs sought to enjoin the defendants from exercising the state's power of eminent domain to condemn their properties as part of a plan to construct an industrial park. The plaintiffs claim that the court improperly (1) concluded that the defendants did not violate the plaintiffs' state and federal constitutional rights, (2) concluded that the defen-

---

[1] The plaintiffs in the first case, defendants in the second and third cases, are Frank W. Bugryn, Jr., Nellie Fillipetti, Mary Dudko, Michael Dudko and John Bugryn. For convenience, we refer in this opinion to the property owners as the plaintiffs.

[2] The defendants in the first case are the city of Bristol, the Bristol development authority and the planning commission of the city of Bristol. The city is the plaintiff in the second and third cases. We refer to the defendants in the first case as the defendants in this opinion.

dants did not act in excess of the authority conferred on them by the Economic Development and Manufacturing Assistance Act, General Statutes § 32-220 et seq., (3) concluded that the defendants did not act unreasonably, in bad faith or in abuse of their power in seeking to acquire all of the subject property by eminent domain, and (4) prejudiced their case by admitting into evidence certain testimony concerning the fair market value of the property and mediation efforts between the parties. We affirm the judgments of the trial court.

The following facts underlie the plaintiffs' claims. As early as 1996, the defendant city of Bristol (city) began developing a plan to create the Southeast Bristol Mini-Industrial Park. Various city entities contacted the plaintiffs in an attempt to achieve the voluntary sale to the city of property owned by the plaintiffs to satisfy the plan's requirements.[3] The plaintiffs repeatedly indicated their lack of interest in selling their property. In May, 1998, the city made final settlement offers to the plaintiffs. On May 21, 1998, the plaintiffs filed the present action seeking temporary and permanent injunctive relief to restrain the defendants from acquiring their properties by eminent domain. On March 25, 1999, the defendant development authority of the city of Bristol unanimously adopted the plan to acquire the subject property as part of the industrial park plan, and the members of the city council of the city unanimously voted to acquire the plaintiffs' property through condemnation. The commissioner of the Connecticut department of economic and community development subsequently approved the development plan. The court granted the city's application for mediation, and the parties attended mediation proceedings before a court-appointed mediator in April, 1999; those efforts

---

[3] The subject properties are located at 269 Middle Street and 299 Middle Street in Bristol.

did not resolve the dispute.[4] On May 25, 1999, the city filed two statements of compensation for the properties with the Superior Court.

On June 4, 1999, the plaintiffs filed motions for temporary and permanent injunctive relief in the two condemnation cases to restrain the defendants from taking further action concerning their property. The city served notice of the taking by eminent domain, pursuant to General Statutes § 8-129, and subsequently filed the required record of notice with the clerk of the Superior Court.[5] The court consolidated the three pending proceedings related to this dispute.[6] With that action pending, the defendants properly refrained from taking any further steps to acquire the subject property. The plaintiffs brought the present appeal after the court denied the injunctive relief.

[4] The mediator's report reflects that the plaintiffs would not accept fair offers of compensation because they did not want to leave their homes.

[5] Pursuant to General Statutes § 32-224 (g), the implementing agency may condemn property in accordance with sections 8-128 to 8-133. General Statutes § 8-129 provides in relevant part: "The redevelopment agency shall determine the compensation to be paid to the persons entitled thereto for such real property and shall file a statement of compensation, containing a description of the property to be taken and the names of all persons having a record interest therein and setting forth the amount of such compensation, and a deposit as provided in 8-130, with the clerk of the superior court for the judicial district in which the property affected is located. Upon filing such statement of compensation and deposit, the redevelopment agency shall forthwith cause to be recorded, in the office of the town clerk of each town in which the property is located, a copy of such statement of compensation, such recording to have the same effect as and to be treated the same as the recording of a lis pendens, and shall forthwith give notice, as hereinafter provided, to each person appearing of record as an owner of property affected thereby and to each person appearing of record as a holder of any mortgage, lien, assessment or other encumbrance on such property or interest therein . . . ."

[6] The first matter was the plaintiffs' action for injunctive relief, the second matter was the condemnation proceeding filed by the city for 299 Middle Street and the third matter was the condemnation proceeding filed by the city for 269 Middle Street.

I

The plaintiffs first claim that the court improperly failed to conclude that the defendants violated the plaintiffs' state and federal constitutional rights. We disagree.

The plaintiffs claim that "the underlying purpose of the subject condemnation was to retain a particular manufacturer, Yarde Metals, within the city of Bristol. The evidence presented clearly supports a conclusion that the condemnation would confer a substantial benefit upon said private party." Although the plaintiffs state this claim in constitutional terms, it arises out of the court's factual determinations.[7] "It is fundamental that, as an attribute of sovereignty, the state government or any properly designated agency thereof may take private property under its power of eminent domain if the taking is for a public use and if just compensation is

---

[7] The plaintiffs claim that because a specific and identifiable private interest would benefit because of the taking by eminent domain, the taking violated their rights under the fifth amendment to the United States constitution, made applicable to the states through the fourteenth amendment to the United States constitution. The fifth amendment to the United States constitution provides in relevant part that private property shall not "be taken for public use, without just compensation." They also claim that it violated their rights under the constitution of Connecticut, article first, § 11, which provides: "The property of no person shall be taken for public use, without just compensation therefor."

The plaintiffs further claim that the court improperly failed to apply a heightened level of scrutiny to their claim. The plaintiffs argue, in this regard, that courts should employ heightened scrutiny "[w]here condemnation authority is exercised in a way that benefits a specific and identifiable private interest" to ascertain whether the public interest is the predominant interest being advanced. The plaintiffs have failed to cite any Connecticut authority to support this argument, and, to the contrary, our Supreme Court has not applied a heightened standard of review in previous disputes concerning the nature of a taking, even where the resale of the subject property to private entities is contemplated. See *Fishman* v. *Stamford*, 159 Conn. 116, 267 A.2d 443 (land condemned under redevelopment plan later sold to church), cert. denied, 399 U.S. 905, 90 S. Ct. 2197, 26 L. Ed. 2d 560 (1970); *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135, 104 A.2d 365 (1954) (land condemned under redevelopment plan offered for sale or lease at fair value to redevelopers).

paid therefor." *Gohld Realty Co.* v. *Hartford*, 141 Conn. 135, 141, 104 A.2d 365 (1954). We must ascertain whether the court's factual finding that the industrial park constitutes a public use and that this taking was not to benefit a private entity was clearly erroneous.

"An appellate court's review of a trial court's decision is circumscribed by the appropriate standard of review. As we have often stated: The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 104–105, 742 A.2d 799 (2000). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence . . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Melillo* v. *New Haven*, 249 Conn. 138, 151, 732 A.2d 133 (1999).

The plaintiffs argue that the evidence adduced before the court "establishe[d] a clear chronology of events which supported a finding that the condemnation and contemplated redistribution of the property would benefit a specific and identifiable private interest, Yarde Metals. The trial court erred in failing to make this finding." Our careful review of the record reveals more than ample evidence supporting the court's finding that the city "approached the homeowners with the intention to purchase their properties for the purpose of building an industrial park. Although the city had numerous discussions with and made plans to have

Yarde Metals as an anchor tenant in the proposed industrial park, no agreement or contract, written or oral, was made with Yarde Metals. Furthermore, and more telling, the evidence shows [that] the city plans on developing the industrial park whether or not Yarde Metals indeed becomes a tenant."

The plaintiffs seek to have us reevaluate the evidence, viewing it harmoniously with their theory that the defendants seek to condemn their property primarily to benefit Yarde Metals. Even if the taking would later provide a site for Yarde Metals, a consequence that would be neither undesirable to the defendants nor adverse to the goals that the park plan seeks to achieve, that fact would not support the plaintiffs' claim in light of the ample evidence in the record concerning the plan as a whole. "[W]here the public use which justifies the taking of the area in the first instance exists, an element over which there is no controversy in the present case, that same public purpose continues even though the property is later transferred to private persons." *Broadriver, Inc.* v. *Stamford*, 158 Conn. 522, 533–34, 265 A.2d 75 (1969), cert. denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970).

Given the soundness of the court's factual determinations and the fact that it is not disputed that the development of an industrial park constitutes a public use, we can discern no violation of the plaintiffs' constitutional rights.

II

The plaintiffs next claim that the court improperly concluded that the defendants did not exceed the authority conferred on them by the Economic Development and Manufacturing Assistance Act, General Statutes § 32-220 et seq. (act). This claim rests on the plaintiffs' factual argument that the city sought to condemn the plaintiffs' property to prevent "losing Yarde

Metals to the town of Southington or the town of Cheshire . . . ." They argue that this purpose behind the taking conflicts with the legislative objectives in the act and that, therefore, the defendants' action is not for a valid public use for purposes of the act. We disagree.[8]

We first note our standard of review. Under the act, the legislature has vested those agencies authorized to exercise the state's power of eminent domain "to promote the retention and expansion and increase the competitiveness of manufacturing and other economic base businesses" in Connecticut. General Statutes § 32-221. The legislature sought to maintain and to develop the state's manufacturing sector, as well as to maintain and to create the jobs that accompany that sector of the economy. See General Statutes § 32-221. The act permits municipalities to designate implementing agencies to exercise the powers delegated under the act, including the power to condemn property. General Statutes § 32-224 (a). "Such authority having been reposed in the agency, the agency's decision is conclusive unless, on judicial review, it is found to be unreasonable, or the result of bad faith, or an abuse of the power conferred." *Pet Car Products, Inc.* v. *Barnett*, 150 Conn. 42, 51, 184 A.2d 797 (1962); see also *Graham* v. *Houlihan*, 147 Conn. 321, 328, 160 A.2d 745 (question of whether agency properly sought to condemn certain property under redevelopment act primarily matter for redevelopment agency, and decision subject to judicial review only to discover whether agency acted unreasonably, in bad faith or in abuse of its powers), cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57 (1960).

As we discussed in part I of this opinion, the court's factual finding that the defendants acted for public,

---

[8] We disagree, as well, with the defendants' assertion that the plaintiffs failed to provide us with an adequate record to review this claim. Although the court discussed the issue with relative brevity, we find ample support for the court's conclusion in other portions of its memorandum of decision.

not private, purposes finds support in the record. We, likewise, can discern no reason to upset the court's conclusion that the defendants did not violate the statutory authority conferred on them by the act. The legislature intended a broad construction of the provisions of the act. General Statutes § 32-233 (a) provides that "[t]he powers enumerated in sections 32-220 to 32-234, inclusive, shall be interpreted broadly to effectuate the purposes thereof and shall not be construed as a limitation of powers."

The plaintiffs urge us to interpret the act as fostering development of the state's manufacturing sector at the expense of, or in competition with, other states and the international community. In their reply brief, the plaintiffs argue that they "do not dispute that the park plan appears *on its face* to meet the legislative mandate . . . ." (Emphasis in original.) They claim, instead, that they introduced evidence that demonstrated that the defendants' motive, or ulterior purpose, in constructing the park was to compete with neighboring municipalities and to retain a particular manufacturer, Yarde Metals. Given the evidence supporting the court's factual determinations, however, we have little difficulty concluding that the defendants did not act unreasonably, in bad faith or outside of their statutory authority in developing their plan for an industrial park.

The court had ample evidence before it that refuted the plaintiffs' arguments that the defendants sought to condemn their property primarily to compete with surrounding towns for Yarde Metals, or for any other company.[9] Evidence adduced before the court demon-

---

[9] For example, the court heard testimony from Jonathan Rosenthal, the executive director of the development authority, as to what types of businesses the city targeted to relocate and which businesses have already committed to locate, in the park. Rosenthal testified that his office targets and has successfully lured companies from several other states. "[I]t is well established that the evaluation of [a witness'] testimony and credibility are wholly within the province of the trier of fact." (Internal quotation marks omitted.) *Greene* v. *Perry*, 62 Conn. App. 338, 342, 771 A.2d 196 (2001).

strated, as well, that the state had recognized the city as an economically disadvantaged community and that the industrial park would serve the public good by creating or retaining manufacturing jobs, creating additional industrial land in the city and increasing the tax base.

In light of the broad powers conferred on the implementing agency under the act and the complex goals sought to be achieved under the act, the court had ample evidence before it that demonstrated that the condemnations were for a public use as set forth in the act.

## III

The plaintiffs next claim that the court improperly failed to find that the defendants acted with unreasonableness, bad faith or in abuse of their power in seeking to acquire all of the subject property by eminent domain. We disagree.

It is well settled that "[t]he determination of what property is necessary to be taken in any given case in order to effectuate the public purpose is, under our constitution, a matter for the exercise of the legislative power. When the legislature delegates the making of that determination to another agency, the decision of that agency is conclusive; it is open to judicial review only to discover if it was unreasonable or in bad faith or was an abuse of the power conferred." *Gohld Realty Co.* v. *Hartford*, supra, 141 Conn. 146.

The act permits a municipality to designate an implementing agency to exercise the powers conferred under the act. General Statutes § 32-224 (a). Once the agency's development plan is approved in accordance with the act, the agency may "by purchase, lease, exchange or gift acquire or rent real property necessary or appro-

No evidence demonstrated that the park was even contingent on Yarde Metals' plans.

priate for the project as identified in the development plan . . . ." General Statutes § 32-224 (g). The agency may also "with the approval of the legislative body of the municipality, and in the name of the municipality, condemn . . . any real property *necessary or appropriate for the project as identified in the development plan* . . . ." (Emphasis added.) General Statutes § 32-224 (g).

As a reviewing court, we are bound to determine whether the court's factual determination that the defendants did not act unreasonably in seeking to acquire all of the plaintiffs' property was clearly erroneous. Our Supreme Court has stated that the appropriate standard in determining whether a certain parcel of land is necessary for purposes of this type of inquiry is whether the taking is "reasonably necessary" given the approved development plan. *West Hartford* v. *Talcott,* 138 Conn. 82, 91, 82 A.2d 351 (1951).

The plaintiffs' claims in this regard are threefold. First, the plaintiffs claim that the defendants gave preferential treatment to another manufacturer whose property is within the project plan area. They claim that the defendants chose not to condemn land owned by an electric company although it lies within the project area. They claim that the defendants intend to build necessary infrastructure for the park on the property of the electric company, but intend to allow the company to retain title to its property. Second, the plaintiffs' claim that the defendants seek to acquire more of the plaintiffs' property than is necessary as part of a plan to intimidate or pressure all of the plaintiffs to sell their property voluntarily. Third, the plaintiffs claim that the defendants' underlying purpose in condemning their properties is to benefit Yarde Metals.

The court rejected the claim that the taking was not necessary. It concluded that no evidence before it dem-

onstrated that the defendants acted with "unreasonableness, bad faith or [in] abuse of their power . . . ."[10]

The arguments advanced by the plaintiffs in this claim once again rest on their interpretation of conflicting evidence before the court. Our review of the record discloses that the defendants did not seek to condemn the electric company's property because there simply was never any need to do so. Jonathan Rosenthal,[11] the executive director of the development authority, testified that electric company officials had always manifested their willingness to work with the city to develop the park and had expressed their willingness to sell land necessary to accommodate neighbor industries and to enter into codevelopment agreements with the city in accordance with the city's needs concerning the plan for the park. That evidence belies the plaintiffs' claim that the defendants gave preferential treatment to an adjacent landowner to the extent such evidence would have helped their claim.

The plaintiffs also argue, essentially, that the defendants should have excluded residential properties from the proposal and that the condemnation of their properties was intended solely to benefit Yarde Metals. The record, however, reflects that the subject property was necessary to the defendants' plan.[12] The plaintiffs' argu-

---

[10] Given the appropriately deferential standard of review afforded this type of determination and the fact that the court made adequate determinations concerning the factual issues presented in this claim, we reject the defendants' assertion that the record is inadequate for our review of this claim.

[11] See footnote 9.

[12] Frank Nicastro, the mayor of the city of Bristol and the chairman of the development authority, testified that although the city council approved the condemnation of forty acres of 299 Middle Street, the defendants sought to condemn only thirty-two acres of the property so that the plaintiffs could retain some of their land. Testimony at trial also established that the defendants sought to condemn the property at 269 Middle Street because omitting this parcel from the overall park plan would cause additional acreage to be taken out of productive use in the park and would cause the park to take on an irregular shape. Testimony also established that the defendants determined that the lot was needed to give the park necessary

ment is that the defendants could have developed the industrial park without acquiring their land. Again, neither this court nor the trial court can second-guess the decision of the agency or the municipality that adopted the plan. To the extent that the plaintiffs challenge the action on the basis that it was intended solely to benefit Yarde Metals, we addressed that claim in parts I and II of this opinion.

While we recognize that the state should not condemn any more property than is necessary to satisfy the legislative mandate, courts are not well suited to second-guess determinations of this nature. "Where it appears that an honest judgment has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." (Internal quotation marks omitted.) *Graham* v. *Houlihan*, supra, 147 Conn. 329. The defendants justified to the court their decision to acquire the plaintiffs' land as part of their proposed industrial park. Although the plaintiffs are concerned about their parcels of land, the defendants' decisions reflected planning and development concerns regarding the significance of the plaintiffs' land to the entire project plan. See *Broadriver, Inc.* v. *Stamford*, supra, 158 Conn. 534.

IV

The plaintiffs next claim that the judgments should be reversed because the court improperly admitted into evidence certain testimony concerning the fair market value of the property and prior mediation between the parties. We disagree.

The plaintiffs originally claimed that the city failed to make reasonable efforts to negotiate with them in

frontage and visibility for marketing purposes. The defendants also indicated that they were concerned about the risk that the substandard condition of the structures at 269 Middle Street would affect the marketability of the industrial park and that eventually the defendants might have to do grading work on other areas of the park that might necessitate work on this parcel.

determining the compensation for the proposed taking. The plaintiffs later withdrew that claim during the hearing. The plaintiffs claim that the court improperly admitted certain evidence concerning the fair market value of their properties on the basis of the defendants' assertions that the evidence was relevant to defend the claim of failure to negotiate. The plaintiffs argue that the evidence was irrelevant and that the court should have excluded it.

The plaintiffs also argue that the court improperly admitted into evidence certain testimony concerning the prior mediation between the parties, which was used to determine the fair market value of the property. The plaintiffs cite the long-standing evidentiary rule that mediation and settlement discussions are generally not admissible at trial. See Conn. Code Evid. § 4-8.

The plaintiffs argue that those evidentiary rulings prejudiced them because they could have led "the court to believe that the plaintiffs were fighting over merely money." They further claim that the admission of that evidence "improperly placed the focus on what the property was worth and what the plaintiffs believed it was worth."

We review these claims in accordance with a well established standard of review. "[A] trial court may exercise its discretion with regard to evidentiary rulings, and the trial court's rulings will not be disturbed on appellate review absent abuse of that discretion. . . . In our review of these discretionary determinations, we make every reasonable presumption in favor of upholding the trial court's ruling. . . . Evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Citation

omitted; internal quotation marks omitted.) *Cafro* v. *Brophy*, 62 Conn. App. 113, 127, 774 A.2d 206 (2001).

Furthermore, a party seeking a new trial because of an improper evidentiary ruling has "the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result." (Internal quotation marks omitted.) *Washington* v. *Christie*, 58 Conn. App. 96, 100, 752 A.2d 1127, cert. denied, 254 Conn. 906, 755 A.2d 884 (2000). The party "is entitled to relief from an erroneous ruling on the admissibility of evidence only if the error is also harmful. . . . [T]he plaintiff [bears the] burden of demonstrating that the erroneous ruling was likely to affect the result of the trial." (Citation omitted.) *Chouinard* v. *Marjani*, 21 Conn. App. 572, 577, 575 A.2d 238 (1990).

After reviewing the record and the court's memorandum of decision, we conclude that the plaintiffs have failed to demonstrate that the evidentiary rulings in any way affected the outcome of the trial. Although the evidence concerning the fair market value of the property appears to have been relevant to the issue of why the city needed to acquire all of the plaintiffs' land and the evidence concerning the mediation efforts appears to have been elicited prior to the plaintiffs' withdrawal of their claim concerning the city's failure to negotiate, we need not reach the issue of whether the court properly admitted the evidence because those evidentiary matters were not material to its decision. The plaintiffs' assertions that the evidence may have lured the court into believing that the dispute centered on money does not satisfy their burden of demonstrating to this court that the rulings likely affected the result.[13]

---

[13] The plaintiffs presented this court with three additional claims, namely, that the court improperly determined that (1) the harms alleged by the plaintiffs did not constitute serious or material injuries, (2) the plaintiffs would not suffer irreparable harm if an injunction did not issue and (3) the

The judgments are affirmed.

In this opinion the other judges concurred.

hardships to the defendants would outweigh the hardships to the plaintiffs
if the court granted the injunction. While the court addressed those issues
in its memorandum of decision, it did not need to do so. The issue before
the court was whether it should grant the injunctive relief requested. The
plaintiffs claimed, essentially, that the defendants impending taking was
violative of state law and of the federal and state constitutions. Once the
court resolved those issues in favor of the defendants, its analysis was
complete.